No. 15,552.

SCHWALB ET AL. *v.* CONNELY.

(179 P. [2d] 667)

Decided April 7, 1947.

Mr. MALCOLM LINDSEY, Mr. FRANK L. HAYS, for plaintiffs in error.

Mr. J. FRED SCHNEIDER, Mr. L. E. F. TALKINGTON, for defendant in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

AN action for damages having genesis in an autopsy or post-mortem examination upon the body of plaintiff's deceased husband. The case was submitted and decided upon stipulated facts, presently to be stated. There were general findings in favor of plaintiff, defendant in error,

and judgment against the several defendants, plaintiffs in error, in the sum of one hundred dollars.

The stipulation consists in part of original matter, and in part of designated paragraphs of the pleadings, some in the complaint, others in the answer, referred to, but not set forth, therein. In such situations, as we think, a preferable practice would be to state all the facts at length in the stipulation. The circumstances considered, we shall endeavor to present the factual situation comprehended in the stipulation, and in proper sequence, largely by copying, but not quoting, from it and the pleadings referred to therein, that is to say, as follows:

Defendant Schwalb is the manager of health and charity and ex officio coroner of the City and County of Denver, and as such had direct charge of and general supervision of the Denver General Hospital and all the operations, functions and employees thereof, including the morgue kept and maintained therein; that defendant Economy is the regularly and duly appointed and acting deputy coroner for the City and County of Denver, and has direct charge of the morgue kept and maintained at said Denver General Hospital; that defendent Williams is the pathologist for the Denver General Hospital, who, proceeding pursuant to the rules and regulations thereof performed an autopsy or post-mortem upon the body of plaintiff's husband; that to determine the cause of death an autopsy was not necessary, and that the certificate of the death was executed by another physician of the hospital staff and filed with the registrar of vital statistics; that said death certificate does not show that an autopsy was performed; that some one or more employees (not identified) of said hospital requested of plaintiff permission to perform an autopsy upon the body of her husband immediately after his death, and that permission was refused; that said autopsy was performed without authorization or the consent of plaintiff, or any representative of the family of the deceased; that all defendants, the employees referred to who made request to per-

form the autopsy, and the nurse referred to in defendant's answer, were all officers or employees of the same employer; that for a long period of time prior to May 13, 1942, plaintiff was the wife of the deceased, and hitherto has been his widow; that for a period of several days prior to the 13th day of May, 1942, deceased had been a patient in the Denver General Hospital in the City and County of Denver, and that on said date he departed this life therein; that defendant Economy, as deputy coroner, exercises and performs the duties of coroner under the general laws of the state, and does not have any control or supervision over autopsies performed pursuant to the consent of relatives; that section 118 of the Denver Charter provides that there shall be, and hereby is, created a department of health and charity, which shall have full charge and control of the health department of the city; the department of charity and correction; the management and control of the poor farms, hospitals, and city markets, now under the control of the commissioner of social welfare; that the manager of health and charity shall be the officer in full charge and control of said department; that he shall also perform the acts and duties now required, or which may hereafter be required by the Constitution and general laws of this state, to be exercised and performed by the county coroner, and shall devote his entire time to the duties of this office; that section 119 of said charter provides the said official shall have control of the City and County Hospitals, the Steele Memorial Hospital, and shall provide, maintain and have charge of a morgue; that he shall, at least quarterly, visit every institution in the City and County, private or public, maintained for the care of the sick, injured, indigent, insane or minors; that pursuant to above charter provisions, and for the purpose of preserving and maintaining the health of the people of the City and County of Denver, there is, and at all times herein mentioned has been conducted and maintained a hospital in the City and County of

Denver known as Denver General Hospital; that said hospital is owned and operated by the City and County of Denver, a municipal corporation of the State of Colorado, and managed by the defendant, Carl Ph. Schwalb, as manager of health and charity of the City and County of Denver; that April 27, 1942, there was admitted as a patient to said hospital one Charles R. Connely, who was thereafter treated and cared for by the regular hospital staff until May 13, 1942, at 6:55 a.m., when he died; that at the time of said Connely's death, and for several days prior thereto, one William Lloyd was also a patient at said hospital, occupied an adjoining bed to that occupied by Connely, and who died the same day at 6:50 a.m.; that pursuant to the rules and regulations of the hospital, death tags were prepared for both patients by the nurse assigned to said ward and who had been nursing and caring for both patients, to wit, William Lloyd and Charles N. Connely; that the death tag prepared for the body of William Lloyd was, through mistake or inadvertence, attached by said nurse to the body of Charles R. Connely; that through mistake or inadvertence the death tag prepared for Charles R. Connely was erroneously attached to the body of said William Lloyd by said nurse; that thereafter the bodies of both William Lloyd and Charles R. Connely were removed to the morgue operated in connection with said hospital and an autopsy or postmortem examination was conducted or performed upon the body of Charles R. Connely as a result of aforesaid switch in death tags and under the mistaken belief that it was the body of William Lloyd; that the consent of relatives of said William Lloyd was given in writing to perform an autopsy upon the body of said William Lloyd; that said autopsy was performed in a decent and scientific manner and without undue exposure of the body of said Charles R. Connely; that defendants Schwalb and Economy took no part in said autopsy or post-mortem examination and were not present thereat, or witnesses thereto; that the

matters and things alleged in said complaint were not directed, countenanced or authorized by said defendants or either of them, and that said acts and things were done and performed without the knowledge or consent of said defendants Schwalb and Economy, or either of them. It is further stipulated that plaintiff's feelings were injured, and the love, veneration and respect that plaintiff entertained for her deceased husband were shocked and wounded by the performing of the said autopsy; that plaintiff was not physically injured by said action.

Expressed somewhat more briefly, it appears that the City and County of Denver owns, maintains and operates a general hospital for the "purpose of preserving and maintaining the health of the people" thereof; that in virtue of the Denver charter, and pursuant to appointment thereto by the mayor, defendant Schwalb is the "Manager of Health and Charity and ex officio Coroner of the City and County of Denver, and * * * has direct charge of and general supervision of" said hospital "and all the operations, functions and employees thereof, including the morgue kept and maintained therein; that defendant Economy is deputy County Coroner, and has charge of the morgue, except that he performs the duties of Coroner "under the general law of the state, and does not have any control or supervision over autopsies performed pursuant to [dependent upon] the consent of relatives," as here; that defendant Williams "is the Pathologist for the Denver General Hospital," and performs autopsies in proper instances; that, proceeding without the consent or knowledge of plaintiff, he performed an autopsy upon the body involved, but it does not appear that defendants Schwalb or Economy ordered or authorized the autopsy, or that either of them witnessed the operation or had knowledge thereof until after the event. Nor does it appear that either of them, or defendant Williams, had knowledge of the fact that other employees of the hospital had sought, and plain-

tiff had refused, permission to perform the autopsy. It does appear that a physician of the hospital staff, other than Williams, executed the certificate of Connely's death; and it does not appear that defendant Williams knew the deceased in his lifetime, or that he recognized that the body upon which he was operating was that of the deceased husband of plaintiff. It does appear that deceased and one William Lloyd were patients at the hospital at the same time, and occupied adjoining beds therein; also, that their deaths occurred almost simultaneously, exactly five minutes intervening. It appears that both patients had been in charge of the same nurse, who, proceeding in accordance with the rules and regulations of the hospital, prepared death tags for the two patients, and that "through mistake or inadvertence" she attached the tag prepared for the body of Connely to the body of Lloyd, and the one prepared for Lloyd to the body of Connely. It further appears that the Lloyd family had in writing consented to an autopsy on his body, and that when defendant Williams appeared at the morgue to perform that autopsy, the body of Connely, but bearing a tag indicating that it was the body of Lloyd, was before him. In the light thereof, and as a "result of aforesaid switch of death tags and under the mistaken belief that it was the body of William Lloyd," as the stipulation reads, and sans knowledge otherwise, Williams, proceeding in due and scientific course, performed an autopsy upon that body. Otherwise stated, wanton or intentional harm to the body of deceased was not purposed by any of defendants, and only defendant Williams, proceeding mistakenly in the circumstances attending, had part in the act of which plaintiff complains. Defendants, as well as the nurse who made the error, and others referred to as employees of the hospital, but not identified, "were all officers or employees of the same employer," that is to say, the City and County of Denver.

 Municipal corporations exercise two classes of powers, "one * * * is of a public and general character, to be exercised in virtue of certain attributes of sovereignty delegated to it for the welfare and protection of its inhabitants; the other relates only to special or private corporate purposes, for the accomplishment of which it acts, not through its public officers as such, but through agents or servants employed by it. In the former case its functions are political and governmental, and no liability attaches to it, either for nonuser or misuser of a power; while in the latter, it stands upon the same footing with a private corporation, and will be held to the same responsibility with a private corporation for injuries resulting from its negligence." *Veraguth v. City of Denver,* 19 Colo. App. 473, 76 Pac. 539. "The authorities are practically agreed in placing certain general duties in the class that is governmental, and among those is the general duty of the preservation of the public health." *Denver v. Maurer,* 47 Colo. 209, 106 Pac. 875. Considering that the hospital where the events upon which plaintiff relies occurred, was maintained and operated "for the purpose of preserving and maintaining the health of the people of the said City and County of Denver," as the stipulation emphasizes, we are persuaded that the municipal entity was carrying on in its governmental, not its corporate, capacity, hence would not be liable. 6 McQuillin Municipal Corporations (2d ed.) p. 1167, §2840; 37 Am. Jur., p. 888, §265.

 Likewise, as we perceive, those subjected to action here, must stand absolved from liability. Schwalb, the manager, Economy, the deputy coroner, Williams, the pathologist, the nurse who erred in attaching death tags, and the employees referred to anonymously, all were employees of the identical employer, the City and County of Denver. The basic error was that of the nurse, who was not made a party defendant. Defendants Schwalb and Economy, as we have seen, had no

part in what occurred, did not order or direct it, or even have knowledge thereof; and Economy was without authority in the premises. Defendant Williams proceeded in accordance with information made manifest in apparent and usual course, and, so far as appears, without wantonness, or evil intent or wrongful purpose soever. In such circumstances, as we are convinced, what he did was not actionable. Restatement of the Law – Torts, §868. The occurrences, clearly resulting from untoward happenings, were most unfortunate and regrettable. So far as revealed, however, all were the logical result of lack of care of one who was a co-employee of those sought to be held in damages, and who, as we have seen, was not made a defendant. "The doctrine of respondeat superior applicable to the relation of master and servant does not apply to a public officer so as to render him responsible for the acts or omissions of subordinates whether appointed by him or not, unless he, having the power of selection, has failed to use ordinary care therein, or unless he has been negligent in supervising the acts of such subordinates, or has directed or authorized the wrong." 46 C.J. 1045, §330. In order that the stated exceptions to the rule may have consideration, it is pertinent to observe, they must be alleged in the complaint, not done here. *Baisley v. Henry,* 55 Cal. App. 760, 204 Pac. 399.

The stipulated record considered, we think judgment should have entered for defendants, and to the end that the trial court may so adjudge, let the judgment be reversed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE ALTER concur.