No. 20792.

STANLEY LIBER *v.* LEO FLOR, GLEN H. PORTER AND
MARIO ZADRA, INDIVIDUALLY AND AS COUNTY
COMMISSIONERS OF OURAY COUNTY.
(415 P.2d 332)

Decided April 25, 1966. Opinion modified and as modified rehearing
denied July 5, 1966.

8

MELVIN M. BELLI, ROBERT E. McLEAN, MARJORIE WOR-
LAND McLEAN, for plaintiff in error.

J. FRED SCHNEIDER, RONALD LEE COOK, ZARLENGO, ZAR-
LENGO & SEAVY, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE SUTTON delivered the opinion of
the Court.

THE parties will be referred to as they appeared in
the trial court where plaintiff in error was plaintiff and
defendants in error were defendants.

This case is before the court on writ of error for the
second time. In the original action plaintiff sought ac-
tual damages of $250,000 and $25,000 exemplary dam-
ages for severe and permanent injuries suffered when
he was struck by pieces of a building destroyed by an
explosion while he was a pedestrian on a public high-
way. He sued both the County of Ouray along with the
named defendants; the latter both individually and as
County Commissioners. The trial court in the first trial
dismissed the action as to all the defendants on the
ground of sovereign immunity. Upon review of that
dismissal, we sustained the judgment as to the County
of Ouray but reversed as to those individually named
as defendants and remanded the case for trial. *Liber v.
Flor,* 143 Colo. 205, 353 P.2d 590 (1960).

Upon re-trial in the district court the jury returned
a verdict in favor of all defendants and judgment was

entered thereon. Plaintiff on writ of error alleges several grounds for reversal which can be summarized as follows:

(1) The court erred in not granting plaintiff's motion for a change of venue;

(2) The court erred in not directing a verdict in favor of plaintiff on the question of liability;

(3) (a) The court improperly instructed the jury, and, the instructions given were confusing, contradictory and unintelligible;

(b) The court erred in refusing to instruct the jury relative to ultra-hazardous activities and nuisance in the storage of dynamite;

(c) The court erred in instructing the jury that the defendants had no insurance;

(d) The court erred in instructing the jury on the degree of care owed plaintiff;

(4) The court erred in refusing to admit into evidence the deposition of the Colorado State Oil Inspector who had conducted an investigation of the explosion at the request of the defendants;

(5) The court erred in refusing to permit certain eyewitnesses to testify concerning certain spontaneous remarks made at the fire just prior to the time of the explosion.

The injury to plaintiff occurred on January 6, 1957. At that time and for at least four years prior thereto, the three defendants were county commissioners of Ouray County. The County owned a building in or close to Ridgway, which will hereinafter be referred to as the county garage, near which plaintiff's injury occurred.

On the fateful day in question the county garage caught fire and after burning for one-half hour to an hour an explosion occurred therein destroying the structure with tremendous force killing three persons and injuring nineteen others. At the time of the fire and explosion there was uncontradicted testimony to the effect that at least 35 to 40 pounds of dynamite were

located in the building. When the explosion occurred, plaintiff was walking on the highway which was located at a distance of some 50 to 70 feet from the county garage. After the explosion, plaintiff was found lying along the side of the highway. One of his legs had been severed and the other leg suffered severe permanent injury. The parties stipulated that plaintiff's injuries were the proximate result of the explosion. It is what caused the explosion and who was responsible therefor that is the core of this dispute.

As to the first ground assigned, the plaintiff, on September 1, 1961, filed a motion for a change of venue, in which it was requested that venue be changed from Ouray to Mesa County. Upon a hearing, the trial court ordered a change of venue to Montrose County and not to Mesa County as requested. A second motion for change of venue, which was filed the morning of the trial, requested that venue be changed to the City and County of Denver. This request was denied by the trial court.

Plaintiff, in essence, alleged the same grounds for change of venue in both his motions, viz:

(1) That the convenience of witnesses and the ends of justice would be promoted by the change; and,

(2) That plaintiff feared he would not receive a fair trial in Ouray or any other county adjacent thereto, because the defendants had an undue influence over the minds of the inhabitants therein.

The plaintiff asserts that when the trial court granted his first motion for change of venue it committed a gross abuse of discretion in only changing the venue to the neighboring county of Montrose instead of, as requested, to Mesa County which is considerably further away. We agree. The granting of a motion for change of venue based on the grounds relied on by plaintiff is discretionary with the trial court. *People v. District Court,* 127 Colo. 483, 258 P.2d 483 (1953); *Reyher v. Mayne,* 90 Colo. 586, 10 P.2d 1109 (1932). In

the absence of a clear showing of abuse of discretion by the trial court we will not interfere. Here, however, a showing was made that the plaintiff was entitled to a change of venue from Ouray County and since the same grounds existed for not trying the case in Montrose County, the court initially should have granted a change of venue to some other county than Montrose. Thus, it is not the second motion that is involved here and no violation of R.C.P. Colo. 98(k) exists.

■ Plaintiff's second contention is that the trial court erred in not directing a verdict for plaintiff on the question of liability. The rule is that a trial court may only direct a verdict where there is no substantial conflict in the evidence and where the evidence introduced is susceptible to only one interpretation by reasonable men. *Nelson v. Centennial Cas. Co.,* 130 Colo. 66, 273 P.2d 121 (1954); *Webster v. Rhodes,* 49 Colo. 203, 112 Pac. 324 (1910). In order to determine the validity of this alleged error, it is necessary first to review the evidence to see if a conflict exists as to the cause of the explosion and then to determine whether the storage of the dynamite, if it caused the explosion, was negligence per se under these facts.

Plaintiff maintains that the only competent evidence is that the explosion was caused by dynamite; while defendants, on the other hand, urge there is a conflict based upon the testimony of their expert witness, Raymond A. Summers, who testified as an expert on dynamite.

Let us review the record in this regard. Plaintiff called several witnesses who testified to the fact that dynamite was usually kept in the garage, and that they had seen some there shortly before the accident; also, that the explosion was caused by dynamite. Even defendants' own witness, Don Caddy, the county road supervisor and the last person in the building the night before the explosion, stated on direct examination:

"Q Now then, the day immediately preceeding (sic)

the explosion was there any dynamite stored in this building?

"A Yes, there was.

"Q Approximately how much?

"A Approximately, I believe I stated thirty-five to forty pounds."

As to what caused the explosion, the following is representative testimony introduced on behalf of plaintiff. For example, the Chief of Police at Ridgway was Carl Orbis. He testified that he had handled dynamite since 1932 and that he saw the explosion. The pertinent question and his answer in this regard were:

"Q Would you describe the type of sound you heard and, if you know, what type of a blast you would say it was?

"A Well, that would be an opinion, but in my opinion it would have been that it was a dynamite blast. It had that same shock, concussion wave to it."

The Mayor of Ridgway, Max Hockley, testified he had worked at the Climax Molybdenum mine for two years and was at that time around the odor of exploded dynamite constantly. His replies to applicable questions were as follows:

"Q Does dynamite have a distinct odor?

"A It does.

"Q Did you on January the 6th 1957 smell dynamite?

"A I did.

"Q Where was that?

"A At this fire.

"Q Was that after the explosion occurred?

"A Yes.

"Q And you are definite it was a dynamite smell?

"A Yes, sir."

Stephen Duncan, who was seventy-two years of age, saw the explosion. He said that he had handled dynamite since the age of 23 and that he was familiar with its odor. His pertinent testimony was:

"A I was about fifteen to twenty feet southwest cor-

ner of it (i.e. The Ouray County Garage just before the explosion).

"Q Did you smell anything at that time?

"A When I was there, no.

"Q Did you smell anything after the explosion?

"A Absolutely.

"Q What was it that you smelled?

"A Well, it was equivalent to dynamite or TNT, I would say.

\* \* \*

"Q At that time you smelled dynamite after the explosion?

"A After it, yes, sir."

Ordie Weston, a Justice of the Peace, testified:

"Q Have you ever seen any other dynamite blasts or have you ever seen a dynamite blast?

"A Yes, I have handled quite a lot of dynamite myself.

\* \* \*

"Q Have you seen dynamite explosions many times?

"A Yes.

\* \* \*

"Q You saw this particular blast as it occurred?

"A Yes.

"Q Would you describe it as a dynamite blast?

"A I would."

In opposition to this testimony defendants offered the testimony of their expert, Mr. Summers, who was qualified in the field of dynamite only. Summers stated that in his opinion, based on the hypothetical question asked, the explosion had centered around and was caused by an air compressor. We note that this compressor was only 36 to 40 inches long and 18 inches in diameter, whereas the building which was blown to pieces was about 40 by 63 feet in size with a basement and small attic. Plaintiff moved to strike Summers' testimony on the ground that his opinion was based on facts not

in evidence. The following is the pertinent direct testimony in regard to the motion to strike:

"Q What was the cause of the explosion, in your opinion?

"A (By Summers) The cause of the explosion was a combination of a compressor under pressure, building a fire where you have high temperatures, *and the fact that it exploded means that the safety valve did not work.* It was under pressure — blown to bits." (Emphasis supplied.)

On cross-examination Mr. Summers further testified:

"Q I will ask you whether or not you know in what direction an air compressor would explode?

"A Unhampered by other objects it should explode in all directions, *providing its steel jacket is equal in strength and thickness in all directions.* (Emphasis supplied.)

"Q So that in order for you to say this explosion was caused by an air compressor you would have to know what kind of an air compressor it was, whether or not it even had a steel jacket?

"A I think that's obvious."

The fact that the safety valve did not work, if such was a fact, does not appear in the record except for the conclusion stated by Summers himself which is based upon certain assumptions voiced by an expert on dynamite and not metallurgy or mechanical engineering. Nor does evidence of the tensile strength and evenness of the steel jacket appear in the record. Thus, the opinion in question was based on at least two purported facts that Summers assumed to be true but which were not substantiated by the testimony of other witnesses or other evidence. The applicable rule is that an opinion by an expert cannot be based on facts not in evidence. See *Enyart v. Orr,* 78 Colo. 6, 17, 18, 238 Pac. 29 (1925) which cites *Butler v. Phillips,* 38 Colo. 378, 88 Pac. 480 (1906) and *Wells v. Adams,* 7 Colo. 26, 1 Pac. 698 (1883). *Accord, May Oil Burner Corp. v. Munger,* 159 Md. 605,

620, 152 Atl. 352 (1930). We conclude, therefore, that Summers' opinion testimony that the sole cause of the explosion was the compressor should not have been admitted into evidence and the trial court committed reversible error in refusing to strike it on motion. There remains, however, Summers' testimony that the dynamite did not explode. Under such circumstances we cannot hold that the evidence presented by the record, without the incompetent portion of Summers' testimony, requires resolution by us, as a matter of law, that the dynamite was the sole or a contributing proximate cause of the explosion. That remains a jury question.

We need next to determine whether the defendants owed the plaintiff any duty in regard to the storage and use of the dynamite, and if so, whether that duty was breached. In solving this phase of the action the questions posed are whether in Colorado the storage of dynamite effects absolute liability for injuries resulting therefrom, or whether a less strict rule applies. In this regard plaintiff relies on *Garden of the Gods Village v. Hellman,* 133 Colo. 286, 291, 294 P.2d 597 (1956) where strict liability was applied due to *blasting;* and on *Willson v. Colorado and Southern Ry. Co.,* 57 Colo. 303, 316, 318, 142 Pac. 174 (1914); and *Denver, S.P. and Pac. R.R. Co. v. Conway,* 8 Colo. 1, 5 Pac. 142 (1884) where fires preceded the explosions. In *Willson, supra,* this court held that "* * * the keeping of explosives in large quantities in close proximity to occupied dwellings is a menace to life, * * *" but that whether it "* * * constitutes actionable negligence must depend more or less upon the facts of each case * * *." Further, that though a common carrier (in that case) has the right to transport explosives "* * * a nuisance may result from a negligent exercise of this right. * * *" And that, "Endangering life by leaving a car containing a high explosive in large quantities in a location in circumstances which would constitute negligence constitutes a nuisance. In such case it is not necessary to

either plead or prove the immediate cause of an explosion * * *."

Apparently then, the Colorado cases draw a distinction between blasting operations and explosions involving the storage of dynamite. This seems to be the majority rule, too. The reason is well stated in *Daugherty v. Hippchen,* 175 Va. 62, 65, 7 S.E.2d 119 (1940), as follows:

"The law applicable seems settled. The degree of care required of one who keeps or stores explosives is relative. Care must be taken in proportion to the danger involved. The care required in such cases is greater than that required where the article stored is harmless. Those who keep explosives must exercise a high degree of care to the end that injuries may not be inflicted." *Accord: Stewart v. United States,* 186 F.2d 627 (7th Cir. 1951) cert. den. 341 U.S. 940, 71 S. Ct. 1000, 95 L. Ed. 1367 (1951); *Kingsland v. Erie County Agr. Soc'y,* 298 N.Y. 409, 423, 84 N.E.2d 38 (1949). Some jurisdictions, however, still follow the landmark English decision of *Fletcher v. Rylands,* L.R. 1 Ex. 265 (1866) and make no such distinction. E.g. *Exner v. Sherman Power Constr. Co.,* 54 F.2d 510 (1931) and discussion in 80 A.L.R. 686.

From what we have said above, it is obvious that we would not apply a rule of absolute liability to these defendants; however, we do apply a rule of relative degree of care depending on the facts. It thus is a question here as to whether the storage in boxes of at least 35 to 40 pounds of dynamite in the Ouray County Garage in Ridgway, which garage was only 50 to 70 feet from a paved highway, constituted a public nuisance as a matter of law. We hold that it did. See *Schnitzer v. Excelsior Powder Mfg. Co.,* 160 S.W. 282, 286 (Mo. 1912). We, therefore, must determine whether any liability attached to these defendants as a result of the maintenance of this nuisance. Ordinarily public officials cannot be held liable under the doctrine of *respondeat superior;* however, where, having the power of selec-

tion, they fail to use ordinary care therein, or, where they have been negligent in supervising the acts of their subordinates or have directed or authorized the wrong, they may be held liable. *Schwalb v. Connely,* 116 Colo. 195, 179 P.2d 667 (1947).

In the instant case these defendants, having had knowledge of the purchase by their road supervisor of the dynamite, as shown by their approval of purchase vouchers in evidence, had a duty to exercise the highest degree of care. If these defendants either knew, or in the exercise of the highest degree of care should have known, from the circumstances surrounding this controversy, that the dynamite was stored in the garage in question, they are liable for the resultant injuries arising therefrom under the doctrine of *Schwalb, supra.* The determination of this phase of the case was a jury question to be decided under a proper instruction. The failure of the trial court to give such an instruction was error.

In connection with the assigned errors relating to other instructions, we note that plaintiff objected to the giving of instructions numbered 6, 8, 9 and 10. In view of what we have said *supra,* we need not comment thereon. In regard to the allegation that the instructions generally were confusing, contradictory and unintelligible, we also need not comment thereon for the same reason. We do comment, however, on two other instructions so that the errors in connection therewith will not be perpetuated. First, Instruction No. 14, which concerned the damages to be awarded, if any, failed to include any maximum dollar amount. This was error, for the maximum sums sought in the complaint should have appeared therein as the amounts not to be exceeded. Second, the trial judge gave an oral instruction concerning his view that there was no insurance coverage, which instruction was highly improper. This occurred in the following manner, viz.: It appears that on the day before the case went to the jury, counsel

20

for defendants in error brought to the attention of the court the fact that three articles then currently printed in the Montrose newspaper contained false information concerning insurance coverage and the amount being sued for. At the request of defense counsel, and because the court had not admonished the jury as to the reading of newspapers, the jury was questioned as to whether anyone of them had read the articles. Two of the jurors replied that they had, but after further questioning stated that they could disregard the statements made in the articles. At that point, plaintiff's attorneys were asked if they wanted a mistrial. They declined. Thereafter, the court, at the request of defense counsel and over the objection of plaintiff's counsel, orally instructed the jury that the defendants did not have insurance and that any judgment would have to be paid by them personally; also, that they themselves were paying for the expenses in the defense of the case and not the county. The three newspaper articles were marked as exhibits and admitted into evidence. Thus, the entire jury had before it the information contained in the articles.

In Colorado, during the actual trial of a case, it is improper to mention insurance in either a positive or negative manner. This is different, however, than the questioning of jurors on *voir dire* where certain types of questions relating to insurance companies is proper. *Johns v. Shinall*, 103 Colo. 381, 86 P.2d 605 (1939); *Rains v. Rains*, 97 Colo. 19, 46 P.2d 740 (1935).

In the instant case, once the two members of the jury who admitted they had read the newspaper account, stated that they would not be influenced thereby, and plaintiff's counsel had expressly waived a mistrial, the issue should have been closed. Prejudicial error occurred when the trial court proceeded, at the insistence of defendants' counsel, not only to admit the newspaper articles in question, but also to instruct the

jury the way it did. Cf. *Conrad v. Twin Oaks, Inc.*, 344 S.W.2d 286 (Mo. 1961).

 The fourth ground of error is a complaint relating to the non-admission of the State Oil Inspector's deposition. In this regard the record discloses that a report was made of the explosion by Mr. Francis Coen, an inspector of the Colorado State Department of Oil Inspection. It was based upon what other people had told him as well as on an inspection made at the site of the explosion at the direction of Mr. Harvey Houston, the State Oil Inspector. At the time of the trial Mr. Coen was unavailable as a witness due to his having left the state. The deposition of Mr. Houston was taken to identify Coen's report because it was believed that Houston would also not be available at the time of the trial. The plaintiff sought to introduce both the report made by Mr. Coen and the deposition of Mr. Houston. The trial court properly refused the admission of both. The applicable rule here is well set out in *Franklin v. Skelly Oil Co.*, 141 F.2d 568 (10th Cir. 1944) wherein it is stated:

"But, expressions of opinion and conclusions on causes and effects based upon factual findings are not always admissible as public records, especially when it is shown either that the conclusion or opinion which the statement purports to convey would not be admissible in evidence if tendered by the direct testimony of the maker, or if the denial of the right of cross-examination would result in the perversion of the rule of trustworthiness and reliability."

And, the existence of C.R.S. '53, 52-1-16 and R.C.P. Colo. 44(a) and (d), which concern proof of official records, does not alter the situation in the instant case.

 The fifth and final point to be considered concerns the refusal of the trial court to permit certain eyewitnesses to testify concerning some spontaneous remarks made at the fire scene immediately prior to the explosion.

In this connection, the witnesses in question testified either on direct or cross-examination that they did not know whether there was in fact dynamite stored in the county garage at the time of the explosion, although they had seen some there seven or eight months previously. Such testimony was not part of the *res gestae* and objections thereto were properly sustained by the trial court.

The judgment is reversed and the cause remanded to the trial court with directions to vacate its judgment and to re-try the matter in a manner consonant with the views expressed herein; further, the trial court is ordered to grant the original motion for change of venue to Mesa County; and, the Mesa District Court is directed to advance the case upon its docket to the end that a new trial may be had at the earliest convenient time.

MR. JUSTICE MCWILLIAMS concurs in the result.

On Petition for rehearing opinion modified and as modified adhered to and the Petition for Rehearing is denied.