Richard HILL

v.

Lowell TOLL and Southern General Surety Co. and Edward J. Hendricks, Superintendent of Phila. Prisons.

Civ. A. No. 69–997.

United States District Court,
E. D. Pennsylvania.

Nov. 13, 1970.

Supplemental Opinion Dec. 9, 1970.

Richard Hill, pro se.

Lenard H. Sigal, Philadelphia, Pa., for Lowell Toll and Southern Gen. Surety Co.

Edward G. Bauer, Jr., City Sol., R. David Bradley, Asst. City Sol., John Mattioni, Asst. City Sol., Philadelphia, Pa., for Edward J. Hendricks.

OPINION

JOSEPH S. LORD, III, District Judge.

On January 4, 1969, plaintiff assertedly was free on bail while awaiting a trial on criminal charges. This bail had been posted for plaintiff by defendant Southern General Surety Co. (hereinafter "Southern"). Lowell Toll, also a defendant, is an agent of Southern.

It is alleged that on July 4, 1969, two agents of defendant Toll, acting in violation of the terms of a bail bond contract entered into between plaintiff and Southern, entered plaintiff's home, seized him and transported him to the Philadelphia Detention Center, where they beat and robbed him. Southern never investigated this conduct at any time thereafter. Further, it is alleged that Detention Center officials, including defendant Hendricks, witnessed the beating and robbery but did not come to plaintiff's aid.

On May 9, 1969, plaintiff brought the present action for damages under 42 U.S.C. § 1983, jurisdiction being grounded upon 28 U.S.C. § 1343(3). All defendants moved for dismissal of the complaint. Thereafter, the plaintiff moved to amend the complaint by naming, as additional defendants, two John Doe "bounty hunters" and two John Doe Detention Center guards. This motion, which is unopposed, is hereby granted. See A/S Kredit Pank v. Chase Manhattan Bank, 155 F.Supp. 30 (S.D.N.Y. 1957) (interpleader of John Doe permitted).

The motions to dismiss advance, as their only argument of colorable worth, the contention that the complaint fails to state a claim on which relief can be granted. The Civil Rights Act, 42 U.S.C. § 1983, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Thus, the Act prescribes, as elements prerequisite to recovery, (1) that the conduct complained of must have been *performed* or *caused* by some person acting *under color of law*, and (2) that such conduct must have subjected the complainant to the deprivation of rights, privileges, or immunities secured to him by the Constitution and laws of the United States. *See* Basista v. Weir, 340 F.2d 74, 79 (C.A.3, 1965). Taking the allegations of the complaint and the inferences to be drawn therefrom most favorably to the plaintiff, as we must on a motion to dismiss, Valle v. Stengel, 176 F.2d 697, 701 (C.A.3, 1949), we conclude that plaintiff has stated a claim under § 1983 as to all defendants.

### A. *Southern's Motion to Dismiss*

Southern, acting through its agents, arrested the complainant. This arrest was carried out pursuant to 19 Pa.Stat. Ann. § 53. Valle v. Stengel, 176 F.2d 697, 701 (C.A.3, 1949). That statute reads, in pertinent part:

"All sureties, mainpernors, and bail in criminal cases, whether bound in recognizance for a particular matter or for all charges whatsoever, shall be entitled to have a bail piece, duly certified by the proper officer or person before whom or in whose office the recognizance of such surety, mainpernors or bail shall be or remain, and upon such bail piece, by themselves, or their agents, to arrest and detain, and surrender their principals * * *; and such bail piece shall be a sufficient warrant or authority for the proper sheriff or jailer to receive the said principal * * *."

In light of this statutory authority, can it be said that the arrest by Southern's agents was made under color of law?

The majority of cases in which the "color of law" requirement has been satisfied have involved public officials. *E. g.*, Monroe v. Pape, 365 U.S. 167, 171–187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Screws v. United States, 325 U.S. 91, 107–113, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944); Basista v. Weir, 340 F.2d 74, 80 (C.A.3, 1965). However, the inquiry in all cases is not whether the actor is a public official, but whether there is sufficient state involvement in the allegedly unconstitutional conduct to satisfy the color of law requirement.[1] This requirement has been held to be satisfied in those cases where a private individual is a "willful participant in joint activity with the state * * *," United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966) (private individual conspired with state officials). And when a private individual knowingly acts pursuant to a statute which encourages him to so act, *see* Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967) (state action found where amendment to California Constitution encouraged private discrimination), he acts as a "willful participant in joint activity with the state * * *." *See* Adickes v. S. H. Kress, 398 U.S. 144, 174 n. 44, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (*dictum*); Klim v. Jones, 315 F. Supp. 109 (N.D.Cal.1970).

Here, when Southern or its agents arrest and surrender its principals, we assume that they knowingly act pursuant to 19 Pa.Stat.Ann. § 53. This statute accords to a limited class of persons (bail bondsmen) the right to order a portion of their business affairs by the use of physical coercion. When we consider that the state generally disfavors and has disfavored self-help and that, moreover, the privilege to arrest involved herein is not a privilege which the general citizenry possesses, it is clear that 19 Pa.Stat.Ann. § 53 has placed the imprimatur of the state on the conduct permitted by that section and has thereby encouraged such conduct. *Cf.* Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627 (1967); Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970). Therefore, Southern's abuse of authority is as much action under color of law as the conduct of the police officers was in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473 (1961). DeCarlo v. Joseph Horne and Company, 251 F.Supp. 935 (W.D. Pa.1966) (arrest made by private detective, which was authorized by the Professional Thieves Act, is act under color of law); *But see* Weyandt v. Masons Stores, Inc., 279 F.Supp. 283 (W.D.Pa. 1968); Warren v. Cummings, 303 F. Supp. 803 (D.Colo.1969).

 Thus, Southern, acting (through its agents) "under color of law", arrested the complainant. However, the arrest itself is not allegedly unconstitutional; it is merely attacked as a breach of state contract law, and as such it cannot form a basis for relief under § 1983. Similarly, Southern's failure to investigate the malfeasance of its agents does not state a constitutional deprivation. But the beating and robbery do state a claim cognizable under § 1983—the claim of an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments. *E. g.*, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473 (1961); Basista v. Weir, 340 F.2d 74 (C.A.3, 1965). We recognize that the Fourteenth Amendment is only violated if there is state action. *E. g.*, Adickes v. S. H. Kress, 398 U.S. 144, 169, 90 S.Ct. 1598 (1970). Since there is action "under color of law" in this case, *a fortiori* there is state action. Adickes v. S. H. Kress at 211, 90 S.Ct. at 1630. (Brennan, J., concurring) ("* * * the statutory term 'under col-

---

[1] Thus, action "under color of law" has been found when an official's conduct constitutes the use or abuse of authority the state vested in him, *e. g.*, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473 (1967), but has not been found when an individual who happens to be a public official acts in the role of a private person pursuing solely personal ends, *e. g.*, Watkins v. Oaklawn Jockey Club, 183 F.2d 440 (C.A.8, 1950).

or of statute' has a narrower meaning than the constitutional concept of 'state action.' ").

The final issue we face as to Southern is whether it can be liable under § 1983 for a beating and robbery allegedly *administered by its agents.* The Civil Rights Act, by its terms, imposes liability upon every person who, as the "natural consequence" of his actions, Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473 (1961), " * * * subjects, or *causes to be subjected,* any citizen of the United States * * * to the deprivation of any rights, privileges or immunities * *," 42 U.S.C. § 1983 (Emphasis added.) Even reading the complaint most strongly in the plaintiff's favor, we nonetheless find no allegations, and can draw no inference, regarding Southern's actions —such as that it ordered the beating, or that it knew or should have known that its agents had violent propensities— which would make it responsible for the beating or robbery under the "natural consequences" test of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473 (1961). *See* Restatement (Second) of Agency, Vol. 1 at 453, 454 (1958).

Hence, Southern can be liable in this action, if it is to be liable at all, only on the basis of vicarious liability. No court has yet faced the issue of whether the doctrine of *respondeat superior* applies to § 1983.[2] The Supreme Court has stated that § 1983 " * * * should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484 (1961). Though this language clearly looks to imposing liability upon blameworthy individuals, we are not persuaded that it was intended to exclude vicarious liability—which operates irrespective of blameworthiness, Restatement (Second) of Agency, Explanatory Notes § 219, comment a at 483 (1958)—from coverage under the Act. Firstly, the facts of *Monroe* did not present the *respondeat superior* issue. Further, if we are to read § 1983 against a truly broad background of tort liability, we then find that the concept of blameworthiness and the doctrine of *respondeat superior* co-exist harmoniously at common law.

■■ It is firmly established that § 1983 *should not be considered to be in derogation of the common law unless it expressly so states or such a reading is imperatively required from the nature of the statute. E. g.,* Pierson v. Ray, 386 U.S. 547, 554, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Bauers v. Heisel, 361 F.2d 581, 587 (C.A.3, 1966). As regards this case, we note that the well-settled doctrine of *respondeat superior* is not expressly abolished by § 1983. Nor does the legislative history make it clear that the Congress intended the doctrine not to apply to § 1983. Further, the salutary reason for the doctrine's application to common law torts, *i. e.,* the furnishing of a "deep pocket" from which a claimant can collect, argues just as forcefully for its application to the cause *of action created by* § 1983. And, conversely, we find it is nowise less appropriate to apply *respondeat superior* to § 1983 than to common law torts.[3] Ac-

---

2. In the recent case of Adickes v. S. H. Kress, 398 U.S. 144, 90 S.Ct. 1598 (1970), the Supreme Court was silent regarding the applicability of vicarious liability to 42 U.S.C. § 1983. However, since the record may have shown, or may have been developed to show, that the Kress Board of Directors acted in such a way as to be liable under the "natural consequences" test of *Monroe* and, at all events, since the applicability of *respondeat superior* to § 1983 was not an issue before the Court, this silence of the Court

casts no illumination from which we can benefit.

3. This would be expectable, since we are not attempting to transplant a common law tort doctrine to alien ground. Though § 1983 makes an individual liable for causing the deprivation of a constitutional right, *not for violating state tort law, e. g.,* United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (C.A.3, 1969) *it is* nonetheless settled that the section gives a right of action for the

cordingly, we now decide, consistent with the traditional injunction that remedial statutes are to receive a liberal construction, that *respondeat superior* is impliedly a part of the Civil Rights Act.

Having so decided, we need only note that if the agents who beat plaintiff were Southern's servants, and if they used excessive force due to their zeal to make the arrest effective, then Southern would be vicariously liable for their conduct under the Restatement view, Restatement (Second) of Agency § 245 (1958), the Pennsylvania view, *e. g.*, Berryman v. Pennsylvania R. R., 228 Pa. 621, 624, 77 A. 1011 (1910), and all other views of which we are aware.[4] Since the complaint is susceptible to this interpretation, we deny the motion to dismiss.

### B. *Toll's Motion to Dismiss*

We think that the complaint can be read to allege that Toll ordered the beating. Since under such a reading a claim upon which relief can be granted is clearly stated, we deny his motion to dismiss.

### C. *Hendricks' Motion to Dismiss*

The sole argument that Hendricks makes in support of his motion to dismiss is that he enjoys judicial immunity. In this case the defendant was required by state law to accept the plaintiff and keep him in detention. We are of the opinion that, in carrying out his duty, Hendricks was not performing a quasi-judicial function which required " * * * principled and fearless decision-making * * *, Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218 (1967). Nor was Hendricks acting pursuant to a court order which mandated a beating and robbery. No case defendant has cited, and no case we have found, indicates that the robe of judicial immunity is sufficiently wide to cloak Hendricks from liability. Accordingly, we deny his motion to dismiss.

### SUPPLEMENTAL OPINION

Further research has disclosed that other courts have decided that the doctrine of *respondeat superior* does not apply to § 1983. Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969); Salazar v. Dowd, 256 F.Supp. 220, 223 (D.Colo. 1966); Schwalb v. Connely, 116 Colo. 195, 179 P.2d 667 (1947). However, those decisions do not persuade us to alter our decision in this case in any way.

---

trespass of federal rights which does sound in tort. *E. g.*, Picking v. Penn. R.R., 151 F.2d 240, 249 (C.A.3, 1945) *overruled on other grounds*, Bauers v. Heisel, 361 F.2d 581 (C.A.3, 1966); Bowens v. Knazze, 237 F.Supp. 826 (N.D.Ill.1965); *See* Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473 (1961) (§ 1983 should be read against a background of tort liability).

4. Looming ahead is the difficult problem of determining out of which materials we shall fashion a *respondeat superior* doctrine for § 1983. Shall we choose a uniform federal rule, *e. g.*, Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), or a federal conformity to state diversities, *e. g.*, Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895)? Hart and Wechsler, The Federal Courts and The Federal System 579 (1953). And if we choose to adopt a uniform federal rule, out of which material shall we fashion it?