505 P.2d 1251

John L. OTERO, Administrator of the Estate of Robert Otero, Deceased, Plaintiff-Appellant,

v.

Jack BURGESS, Mel Vigil, James Trent, Jack H. Graves and Norman Holton and Leo Bradshaw, Defendants-Appellees.

No. 924.

Court of Appeals of New Mexico.

Jan. 5, 1973.

Certiorari Denied Feb. 6, 1973.

Melvin L. Robins, Lorenzo A. Chavez, Albuquerque, for plaintiff-appellant.

Lowell E. McKim, Denny, Glascock & McKim, Gallup, for defendants-appellees.

## OPINION

HENDLEY, Judge.

Plaintiff appeals an adverse judgment in an action tried without a jury to recover damages for wrongful death. Plaintiff's action was against Burgess, the mine superintendent; Bradshaw, the safety director; Holton, the shift boss; Vigil, the mine foreman; Trent, the head electrician; and Graves, decedent's immediate foreman. Plaintiff seeks reversal on four grounds: (1) liability without fault for those who store dynamite; (2) absolute liability under the theory of "nuisance in fact" because of the location of the dynamite storage box; (3) lack of substantial evidence to support the trial court's finding that decedent fired a spad gun into the storage box and the conclusion of law that dece-

dent was contributorily negligent; and (4) defendant's failure to use the degree of care commensurate with the danger to be apprehended.

We affirm.

Decedent, a 22 year old electrician, was killed by an explosion in a Kerr-McGee mine during its construction phase. Dynamite was used in that phase and approximately 75 sticks were in the mine storage box (powder magazine) at the junction of the 7000–7800 drifts of the 1–5 level. Only daily blasting quantities of dynamite were kept below surface.

Decedent was sent to install electrical boxes which were located within 10 feet of the powder magazine. He was instructed on how to use a spad gun to punch holes in the electrical box in preparation for hanging them in an already prepared place. As a part of the instructions decedent was given a warning about the powder magazine and detailed instructions in the use of the spad gun in making the holes. Decedent had been instructed ". . . when shooting this spad gun making holes, that he lay a piece of lagging [plank] on the floor, lay the box on it, push the spad gun in and shoot it through the lagging into the floor."

The powder magazine was clearly marked "EXPLOSIVE" and had been in the same location for about six weeks prior to the accident. It was constructed of two by twelve planks and was two feet high, two feet wide and four feet long.

Immediately before the explosion an eye witness stated that he was watching decedent "working over there over the box [powder magazine]"; that decedent "was bending over the box working"; and "[t]hen just the explosion, a blue flash and that was it." The eye witness was a sufficient distance (150 to 200 feet) that he could not tell the nature of work decedent was doing while bending over the powder magazine. The shield of the spad gun was flared evenly around the barrel of the gun. The safety director testified that this was consistent with the theory that the spad gun was pointed directly at the explosion. The spad gun had to be fully depressed on the shield before it could be fired. This is the cocking action of the gun, otherwise it cannot be fired.

A mine inspector stated that the procedures followed in the storing and the location of the dynamite were usual and safe and that it is more hazardous to move explosives than to store them.

Plaintiff challenges certain findings of fact and conclusions of law made by the trial court. Those findings and conclusions read:

### "FINDINGS OF FACT"

". . .

"10. The dynamite was stored in an appropriate place under the circumstances then existing.

"11. The storing of the dynamite did not of itself involve a risk of serious harm to any person.

". . .

"14. The dynamite which was involved in the accident in this case had been properly handled and stored in accordance with established safety procedures of Kerr-McGee Corporation and the mining industry generally.

". . .

"17. The storing of the dynamite in the dynamite box at the aforesaid location did not constitute a nuisance in fact.

"18. The defendants were not negligent in any respect:

"a. In the handling, storing or using of dynamite;

"b. in the training of the deceased;

"c. in assigning the work to the deceased which he was doing at the time of the accident;

"d. in sending the deceased to work at the place where the accident occurred;

"e. in instructing the deceased concerning the manner by which he was

to accomplish the work which was assigned to him, or

"f. in sending him by himself to do the assigned work.

"...

"21. The deceased Robert A. Otero fired a spad tool into the dynamite storage box and caused the dynamite therein to explode, killing him as a result thereof."

### "CONCLUSIONS OF LAW"

"1. The activities being carried on in the Section 30 West Mine at the time of the explosion which took the life of Robert A. Otero and the storing of the dynamite at the junction of the 7000–7800 drifts of the 1–5 level did not constitute:

"a. An ultrahazardous activity;

"b. a nuisance per se, or

"c. a nuisance in fact.

"2. Strict liability should not be imposed upon the defendants.

"...

"4. The deceased was negligent in firing the spad tool so as to detonate the dynamite.

"5. The proximate cause of the explosion was the aforesaid negligent action on the part of the deceased, Robert A. Otero.

"6. The negligent action on the part of the deceased which was the proximate cause of the accident constituted contributory negligence which bars the plaintiff from recovery herein.

"... ."

The trial court also made the following unchallenged findings of fact. These unattacked findings are the facts of the case (§ 21–2–1(15)(16)(b), N.M.S.A.1953 (Repl.Vol.1970)) and are in part as follows:

"13. Dynamite is intentionally manufactured as a tool that will explode and do work. The nature of dynamite is such that it is safe to handle, store, and use if handled, stored, and used in ac-

cordance with established safety procedures for the handling, storing and using of dynamite.

"...

"15. The handling, storing and using of dynamite is specifically authorized by the Mining Code of the State of New Mexcio and by Federal legislation.

"16. At all times pertinent hereto, the defendants complied with statutory and regulatory provisions relating to the handling, storing and using of dynamite.

"...

"19. The deceased Robert A. Otero knew that there was a dynamite storage box at the location where the accident occurred."

There was evidence to support the trial court's findings of fact as to the proper handling and storing of the dynamite in accordance with federal and state laws; that the dynamite was stored in an appropriate place and that the storing of dynamite did not in and of itself involve a risk of serious harm to any person; and there was also evidence from which a reasonable inference could be drawn that, contrary to the instructions he had been given, decedent was working the spad gun on top of the powder magazine and fired the spad into the magazine thereby causing the explosion.

In the instant case an explosives expert, who was the representative of the company supplying the dynamite to Kerr-McGee, agreed that "dynamite doesn't go off except when it's used with caps and fuses", or "prima-chord" as the detonating cause or a spad gun shot through it or dropping the dynamite; that the impact necessary to detonate dynamite is measured by an air gap factor—the higher the air gap factor (e. g. 40 inches) the more easily detonation could be accomplished; that dynamite used by Kerr-McGee had an air gap factor of 8 inches and thus was of a low sensitivity; that electrical current alone would not detonate commercial dynamite; that noise or concussion from the spad gun would not detonate dynamite.

The Deputy State Mine Inspector stated that the only possible detonating agent was the spad gun. There was also testimony that there had never been a ricochet incident resulting from the use of the spad gun.

Plaintiff contends that the storing of dynamite is an ultrahazardous activity and the issue of negligence on the part of the defendants or contributory negligence on the part of plaintiff is immaterial. He asserts that the fact of an injury to plaintiff under the circumstances gives rise to strict liability.

Plaintiff bases his contention on Thigpen v. Skousen & Hise, 64 N.M. 290, 327 P.2d 802 (1958) (a dynamite blasting case) on the premise that Thigpen relied on Exner v. Sherman Power Construction Co., 54 F.2d 510, 80 A.L.R. 686 (2nd Cir. 1931) wherein the *Exner* court stated that:

"Dynamite is of a class of elements which one who stores or uses in such a locality, or under circumstances as to cause likelihood of risk to others, stores or uses at his peril. He is an insurer, and is absolutely liable if damage results to third persons, either from the direct impact of rocks thrown out by the explosion (which would be a common-law trespass) or from concussion."

However, *Thigpen* is distinguished since it was only concerned with blasting as it related to direct impact and concussion. We do not deem *Thigpen* as authority for the proposition that the storage of dynamite gives rise to strict liability. *Exner* was cited in *Thigpen* solely for the proposition that one who conducts blasting operations is strictly liable to third parties for concussion damage caused during those operations.

■■■ Although *Exner* made no distinction between the blasting operations and explosions involving the storage of dynamite, other decisions do. Liber v. Flor, 160 Colo. 7, 415 P.2d 332, 35 A.L.R.3d 1165 (1966). Prosser, Law of Torts at 514 (4th Ed. 1971) states:

". . . Many of the later cases have come to the conclusion, which might be drawn with fair success from the facts of the entire group of blasting cases, that the *strict liability is entirely a question of the relation of the activity to its surroundings*; and that the use of explosives on an uninhabited mountainside is a matter of negligence only, while any one who blasts in the center of a large city does so at his peril, and must bear the responsibility for the damage he does, despite all proper care." (Emphasis ours)

We hold that strict liability in the storage of dynamite depends on the relation of the storage to the surroundings; specifically, the storage must be ". . . inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings." Prosser, supra, at 508. See Liber v. Flor, supra.

■■■ Without making a re-review of the evidence, findings of fact Nos. 10, 11, 14, 17, 18 and 21 are supported by substantial evidence. Findings 10, 11 and 14 negate the application of strict liability.

■■■ This being the case, it is fundamental that plaintiff cannot recover if defendants were not at fault. Garrett v. Nissen, Corporation, 84 N.M. 16, 498 P.2d 1359 (1972). Here again, there is substantial evidence to support the trial court's findings that defendants were not negligent. Likewise, there was substantial evidence to support the finding of contributory negligence on the part of decedent, that is, decedent's conduct fell short of the standard to which the reasonable man should conform in order to protect himself from harm. Restatement (Second), Torts § 466(b)(1965); Williamson v. Smith, 83 N. M. 336, 491 P.2d 1147 (1972).

Plaintiff refers us to the Restatement, Torts § 519 and § 520 (1938). Those sections state:

"§ 519. MISCARRIAGE OF ULTRA-HAZARDOUS ACTIVITIES CAREFULLY CARRIED ON."

"Except as stated in §§ 521–4, one who carries on an ultrahazardous activity is liable to another whose person, land or

chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

"§ 520.   DEFINITION OF ULTRA-HAZARDOUS ACTIVITY."

"An activity is ultrahazardous if it

"(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and

"(b) is not a matter of common usage."

These restatement rules seem to ignore the relation of the storage to the surroundings. See Prosser, supra, at 512. But even if they were held to be the applicable rules (which we do not) they would not impose liability on defendants. For their application, the activity must necessarily involve a risk of serious harm. See § 520, supra. Finding 11 is that the storage did not involve such a risk.

◼ Plaintiff next contends that the location of the powder box next to where decedent was to install the electrical boxes was a nuisance in fact and subjected defendant to absolute liability. In Koeber v. Apex-Albuq. Phoenix Express, 72 N.M. 4, 380 P.2d 14 (1963) our Supreme Court approved the following definition:

" '* * * Nuisances are classified as nuisances per se and nuisances in fact. A nuisance per se is generally defined as an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings, while a nuisance in fact is commonly defined as an act, occupation, or structure not a nuisance per se, but one which may become a nuisance by reason of circumstances, location, or surroundings. * * *' "

◼ The storage of explosives does not constitute a nuisance per se without regard to the manner of their storage. Denney v. United States, 185 F.2d 108 (10th Cir. 1950) ; 35 A.L.R.3d at 1189 (1966) ; Murphy v. Ossola, 124 Conn. 366, 199 A. 648 (1938). It is plaintiff's position that the maintenance of the dynamite box at the intersection and next to the place where decedent was to install the electrical boxes was a nuisance in fact and subjected defendants to absolute liability. We disagree.

The testimony by the explosives expert was that working near the powder magazine with a spad gun would not, in and of itself, cause the dynamite to explode. The powder magazine was in compliance with existing federal and state law as to construction and location. Decedent had been instructed how and where to use the spad gun. The powder magazine was not a nuisance in fact "by reason of circumstances, location or surroundings." We cannot say as a matter of law that the location of the powder magazine in the mine, which was in the construction phase, was a nuisance in fact.

◼ Plaintiff next asserts that the trial court's finding of fact No. 21, that decedent fired the spad gun into the dynamite storage box and caused the dynamite to explode is not supported by substantial evidence and therefore conclusions of law Nos. 4, 5 and 6, relating to decedent's negligence being the proximate cause of the explosion have no support. We disagree.

As heretofore shown the testimony relating to the spad gun, that is, the manner in which it has to be fired, the flaring of the shield, and the location of the decedent working over the powder magazine immediately prior to the explosion gives rise to the inference that decedent was working on top of the powder magazine and fired the spad tool directly into the dynamite, thereby causing the explosion.

Lastly, plaintiff contends that substantial evidence was introduced that defendants failed to use the degree of care commensurate with the danger. We disagree.

◼ We do not disagree with the rule that persons in charge of dangerous instru-

mentalities must use a degree of care commensurate with the dangerous instrumentality (Ferreira v. Sanchez, 79 N.M. 768, 449 P.2d 784 (1969)) or expressed in another way, must exercise that degree of care which a reasonably prudent person would use under the same or similar circumstances. Cook v. O'Connell, 65 N.M. 170, 334 P.2d 551 (1959).

■ The issue, however, is whether there was substantial evidence to support the trial court's finding of fact No. 18, that the defendants were not negligent. Although there was conflicting evidence we need only view that evidence and the reasonable inferences that flow therefrom which will support the finding. We hold there was substantial evidence in the record to support the finding.

In arguing the degree of care required of defendants, plaintiff asserts § 63–28–18, N.M.S.A.1953 (Repl. Vol. 1960, pt. 1) was violated. This statute provides that inexperienced men in underground mines "shall at all times" be under the supervision of an experienced miner or official. Plaintiff asserts violation of this statute was negligence per se.

There is no specific finding as to the violation of § 63–28–18, supra, but none was requested. Part of finding No. 18 is that defendants were not negligent in sending deceased, by himself, to do the assigned work. There is evidence that deceased was an experienced worker in his classification of electrician third class; that the job deceased was sent to do was one to be done by one with decedent's classification; and that deceased had done similar jobs by himself on prior occasions. With this evidence, which supports the trial court's finding, we cannot say as a matter of law that deceased was inexperienced and, thus, cannot say that § 63–28–18, supra, was applicable.

Affirmed.

It is so ordered.

WOOD, C. J., and HERNANDEZ, J., concur.