CITY OF NORTHGLENN, COLORADO,
et al., Plaintiffs,

v.

CHEVRON U.S.A. INC., Defendant,

Jerald L. Glenn and Peggy L.
Glenn, Intervenors.

Civ. A. No. 81–C–44.

United States District Court,
D. Colorado.

July 21, 1981.

Jay W. Tracey, Jr., Holland & Hart, Denver, Colo., Thomas F. Workman, J. Richard Morrissey, Stephen T. Swanson, F. John Nyhan, Lawler, Felix & Hall, Los Angeles, Cal., for defendant.

Joseph J. Branney, Branney & Hillyard, Englewood, Colo., Harvey P. Wallace, Denver, Colo., for plaintiffs.

Norton Frickey, Stephen E. Connor, Wood, Ris & Hames, Denver, Colo., for intervenors.

## SUPPLEMENTARY MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

From the outset of this case, the City of Northglenn and the individual plaintiffs who reside in Northglenn have contended that the doctrine of strict liability should apply to the defendant Chevron U.S.A., Inc., which stored several thousand gallons of gasoline underground near a residential area and its sewer lines. Chevron has disputed this contention.

Application or non-application of this doctrine affects trial in this case in several ways, including evidence presentation and jury instructions. In an attempt to resolve this issue as soon as possible before trial began, this Court ruled on June 3, 1981, that strict liability would be applied to one who stores gasoline at a service station in or near a residential area. This opinion supplements that June 3, 1981 ruling in open court, which was very brief and did not discuss the authorities or reasoning the Court had considered in deciding that the strict liability doctrine applies.

Jurisdiction in this case is based on diversity of citizenship, and, therefore, Colorado law determines whether strict liability applies. 28 U.S.C. § 1652. Although Colorado does apply strict liability to persons engaged in blasting operations, *Garden of the Gods Village v. Hellman*, 133 Colo. 286, 294 P.2d 597, 600 (1956), no Colorado appellate court has decided whether strict liability also should be imposed when explosive gasoline is stored in large amounts in or near residential areas. In the absence of controlling state precedent, a district court must attempt to predict how the state courts would rule if faced with the question before it.

On cursory examination, *Liber v. Flor*, 160 Colo. 7, 415 P.2d 332 (1966), appears to be analogous. In *Liber*, the Colorado Supreme Court refused to apply strict liability to persons who stored dynamite. Two factors make it doubtful, however, that the Colorado courts would extend *Liber* and refuse to apply strict liability to large amounts of gasoline stored in residential areas. First, *Liber* arose in Ouray County, a sparsely-populated, rural county in southwestern Colorado with a long and rich mining history. Stored dynamite had been nec-

essary to Ouray County's local mining economy for decades before *Liber* was decided.[1]

Second, in the fifteen years since *Liber* was decided, there has been substantial growth and development in the law, extending the ambit of strict liability. This development has been greatly influenced by the Restatement of Torts 2d, §§ 519[2] and 520.[3] *Liber* did not discuss Sections 519 and 520. That is understandable, since those sections had been promulgated only as tentative drafts when *Liber* was decided, and were not officially adopted by the American Law Institute until 1977.

The Alaska Supreme Court has discussed Sections 519 and 520 in deciding whether to impose strict liability for explosives stored in an Anchorage suburb.[4] *Yukon Equipment, Inc. v. Firemen's Fund Insurance Company*, 585 P.2d 1206, 1208–10 (Alaska S.Ct. 1978). This Court concludes that Sections 519 and 520, and the Alaska Supreme Court's analysis of those sections in *Yukon Equipment*, would persuade the present Colorado Supreme Court to retreat from *Liber*, or at least decline to extend it to cases like this where an explosive substance which migrates in liquid or gaseous form is stored in a suburban residential area. The danger here to human life and health presents a problem far greater than that faced by the *Liber* court.

This Court further concludes that the Colorado Supreme Court would impose strict liability for storage of large amounts of gasoline in a residential area, and would adopt the substance of the rule and reasoning exemplified by *Yommer v. McKenzie*, 255 Md. 220, 257 A.2d 138 (1969) and *Siegler v. Kuhlman*, 81 Wash.2d 448, 502 P.2d 1181 (1972). The thorough discussions in those cases render an in-depth analysis here unnecessary. It must be emphasized, however, that the service station involved in this case had the capacity to store over 16,000 gallons of gasoline at a time. This is not merely fuel, but a highly volatile, explosive, and toxic substance as well as one of the most powerful solvents commonly available.

The widespread use of gasoline in no way diminishes its inherently dangerous character. Those who store and dispense gasoline for profit, and who attempt to increase that profit by locating their filling stations and incidental storage facilities in or near residential areas, should be held liable for harm resulting to persons or property from gasoline stored at or leaking from those stations.

Accordingly,

IT IS ORDERED that the plaintiffs may present to the jury the doctrine of strict liability for abnormally dangerous activities as one theory of liability.

(a) the existence of a high degree of risk of some harm to the person, land, or chattel of others;

(b) the likelihood that the harm that results from it will be great;

(c) the inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes."

1. *See* comments (i) and (j) to Restatement of Torts 2d, § 520. Population density and common usage, on a local basis, are factors to be considered in determining whether a particular activity is abnormally dangerous.

2. Restatement of Torts 2, § 519 provides:

"(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land, or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

3. Restatement of Torts 2d, § 520 provides:

"In determining whether an activity is abnormally dangerous, the following factors are to be considered:

4. The Alaska Supreme Court did not *rely* on Sections 519 and 520 in imposing strict liability for stored dynamite, although it fully analyzed the issue before it under those sections. The court chose instead to follow *Exner v. Sherman Power Construction Co.*, 54 F.2d 510 (2d Cir. 1931), which was rejected by the Colorado Supreme Court in *Liber*.