BEELER ET AL., RESPONDENTS, *v.* BUTTE & LONDON COP-
PER DEVELOPMENT CO., APPELLANT.

(No. 2,840.)

(Submitted May 25, 1910. Decided July 6, 1910.)

[110 Pac. 528.]

*Mines and Mining — Personal Injuries — Survival of Action—*
*Statute of Limitations—Jury—Examination on Voir Dire—*
*Negligence—Pleading and Proof—Damages Recoverable—Evi-*
*dence—Admissibility.*

Mines and Mining—Personal Injuries—Survival of Action—To Whom.
   1.   Under the express provision of section 5250, Revised Codes, the right of action to recover damages for injuries to a mine employee, alleged to have been caused by the negligence of a fellow-servant,

survives to, and may be prosecuted and maintained by, the heirs or personal representatives of the deceased.

Same—Statute of Limitations—"Liability Created by Statute."

2. *Held*, that an action brought under Chapter 23, Laws of 1905, p. 51 (Revised Codes, secs. 5248–5250), to recover damages for injuries to a mine employee, does not fall within the category of those founded "upon a liability created by statute," mentioned in section 6449, subdivision 1, as being barred unless brought within two years.

Same—Jurors—Examination on *Voir Dire*—Scope.

3. Defendant mining company, the employees of which were insured against accident by a casualty company, cannot be said to have been prejudiced by the action of the district court in permitting plaintiff to ask each juror on his *voir dire* whether he had any business relations with such casualty company, where it was not apparent that either the purpose or tendency of the question was to inform the juror that the burden of any judgment against the mining company would not fall upon it, but upon the casualty company, and where the latter company was not thereafter mentioned in the case.

Same—Negligence—Fellow-servants—Evidence—Sufficiency.

4. Evidence, circumstantial in character, *held* sufficient to warrant submission of the case to the jury on the question whether injuries to a mine employee were caused through the mishandling of a hoisting engine by the engineer, his fellow-servant, so as to make defendant mining company liable under Chapter 23 of the Laws of 1905, page 51.

Same—Negligence—Pleading and Proof.

5. Plaintiff in a personal injury action is not required to prove each of the particulars of negligence alleged in the complaint; if enough is shown to establish that negligence in any of the particulars charged was the proximate cause of the injuries, a case is made sufficient to go to the jury.

Same—Survival of Action—Instantaneous Death—Recovery of Damages.—Instructions.

6. An instruction in an action for personal injuries to an employee of a mine, caused by the negligence of a fellow-servant—which right of action survived to his heirs, under section 5250, Revised Codes—that in determining the amount of recovery the jury were limited *inter alia* to a sum of money which would have compensated the deceased for pain and suffering, if any, between the injury and his death, if he survived the injuries for "*any* length of time," was not objectionable where, by the use of the subsequent words "unless you find death was instantaneous," the jury were correctly informed that there must have been an appreciable period of suffering to warrant recovery on that account.

Same.

7. The right of action which survives to the heirs or representatives of one who dies from injuries received through the negligence of a fellow-servant while working in a mine includes not only damages for the pain and suffering endured by deceased, but also for the loss of earning capacity for the period of his natural expectancy of life.

Same—Safety Cages—Absence of Doors—Evidence—Admissibility.

8. Even though, under section 8536, Revised Codes, mining cages, when used in sinking a shaft, need not be equipped with doors,

and plaintiffs did not claim any right to recover on account of their absence from the one between which and the wall-plates of the shaft deceased was caught while being hoisted, evidence of their absence was nevertheless competent as bearing upon the degree of care required of the engineer, through whose negligence the accident was alleged to have occurred, in lowering and hoisting the cage.

Same—Instructions—When Appellant may not Object.
9.  An instruction which, in restricting the use of certain evidence, had the effect of protecting appellant company's rights, was not open to objection by it.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Margaret A. Beeler and others against the Butte & London Copper Development Company.  Judgment for plaintiffs.  Defendant appeals from the judgment and from an order denying its motion for a new trial.  Affirmed.

*Messrs. Kremer, Sanders & Kremer,* and *Messrs. Walsh & Nolan,* submitted briefs in behalf of Appellant.  Oral argument by *Mr. L. P. Sanders* and *Mr. T. J. Walsh.*

It is held by all courts that it is error to permit reference at the trial of a cause to the fact that the defendant may be one insured with some assurance company.  That even to permit the jury to gather by way of inference that a defendant carries insurance is reversible error.  In the case of *McCarthy* v. *Spring Valley Coal Co.,* 232 Ill. 473, 83 N. E. 957, we find circumstances very similar to those involved here.  (See, also, *Iverson* v. *McDonnell,* 36 Wash. 73, 78 Pac. 202; *Beaumont Traction Co.* v. *Dilworth* (Tex. Civ. App.), 94 S. W. 356; *Harry Bros. Co.* v. *Brady* (Tex. Civ. App.), 86 S. W. 615; *Lassig* v. *Barsky,* 87 N. Y. Supp. 425; *Lone Star Brewing Co.* v. *Voith* (Tex. Civ. App.), 84 S. W. 1100; *Perry etc. Co.* v. *Wilson,* 160 Ind. 435, 67 N. E. 183; *G. A. Fuller Co.* v. *Darragh,* 101 Ill. App. 664; *Sawyer* v. *Arnold Shoe Co.,* 90 Me. 369, 38 Atl. 333; *Lowsit* v. *Seattle Lumber Co.,* 38 Wash. 290, 80 Pac. 431; *Westby* v. *Washington etc. Co.,* 40 Wash. 289, 82 Pac. 271; *Anderson* v. *Duckworth,* 162 Mass. 251, 38 N. E. 510; *Eckhart etc.* v. *Schaefer,* 101 Ill. App. 500.)

The evidence is insufficient to sustain the verdict for the reason that no adequate presumptions of fact were established. The gist of the theory set up in the complaint is that McNichols negligently jerked the deceased off the cage. Instead of establishing this by a preponderance of competent evidence, the record discloses that the verdict of negligence was arrived at only by presumption of the most violent kind. The only presumptions the law recognizes are immediate inferences from facts proved, and where a presumption is to arise from a number of connected and dependent facts, every fact essential to the series must be proved. There is no immediate connection between the circumstance that the cage was ascending the shaft when Beeler was caught and the inference or presumption that, to sustain the verdict, must be drawn that the engineer negligently jerked Beeler off the cage. The facts, such as are proved, are as consistent with one as with the other theory; they do not sustain the burden imposed upon respondents. (See *Atchison etc.* v. *McFarland,* 2 Kan. App. 662, 43 Pac. 788; *United States F. & G. Co.* v. *Des Moines,* 145 Fed. 273, 74 C. C. A. 553; *Deschenes* v. *C. & M. R. R.,* 69 N. H. 285, 46 Atl. 467; *Balding* v. *Andrews,* 12 N. D. 267, 96 N. W. 305; *Denver etc.* v. *DeGraff,* 2 Colo. App. 42, 29 Pac. 664; *Murphy* v. *Hays,* 68 Hun, 450, 23 N. Y. Supp. 70; *Dame* v. *Laconia Car Co. Works,* 71 N. H. 407, 52 Atl. 864; *Hamilton* v. *Lake Shore etc.,* 4 Ohio N. P. 249; *Leonard* v. *Miami Min. Co.,* 148 Fed. 827, 78 C. C. A. 517.) Presumption yields to direct evidence. (*Macarty* v. *Foucher,* 12 Mart. (O. S.) 114.) Presumptions cannot be indulged in opposition to facts which show that the fact sought to be established by presumption can have no existence. (*Largen* v. *State,* 76 Tex. 323, 13 S. W. 161.)

The right of recovery in a cause of action for personal injuries which survives, by virtue of a statute, is in the personal representative, and the avails become assets of the estate, unlike the proceeds of a new and independent right of action granted to dependent relatives though prosecuted in the name of the personal representative, though for their benefit. (*Nemecek* v.

*Filer etc.*, 126 Wis. 71, 105 N. W. 225; *Missouri Pac. Ry. Co.* v. *Bennett*, 5 Kan. App. 231, 47 Pac. 183.)   The respondents, the heirs of deceased, have no right of action against the appellant arising out of any survival of a right of recovery in him.

Instruction F is erroneous.   Though in the case of an action for personal injuries surviving under the statute, recovery may be had for pain and suffering endured by the deceased, he is not entitled to recover if he survived any length of time, as the jury was told.   If such suffering as he underwent was borne only in connection with the immediate incidents accompanying his death, he has no right of recovery.   If they are "substantially contemporaneous" with the death, there can be no recovery.   (*Barton* v. *Brown,* 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727.)   The recovery, in a survival action, on account of diminished earning capacity, is to be calculated only for the period intervening between the injury and the death (8 Am. & Eng. Ency. of Law, 912), though as to this the decisions are not in harmony.   (*Kyes* v. *Valley Tel. Co.,* 132 Mich. 281, 93 N. W. 623.)

In behalf of Respondents there was a brief by *Messrs. Maury & Templeman,* and *Mr. J. O. Davies.*   *Mr. Maury* and *Mr. Davies* argued the cause orally.

The question propounded to the jury relative to their business connections with the casualty company has been before the courts several times, and has always been held to be proper and not prejudicial.   (*Hoyt* v. *Ind. Asphalt Co.,* 52 Wash. 672, 101 Pac. 367; *Grant* v. *National Ry. Spring Co.,* 100 App. Div. 234, 91 N. Y. Supp. 805; *Blair* v. *M. McCormick Const. Co.,* 123 App. Div. 30, 107 N. Y. Supp. 750.)

The evidence by every reasonable intendment discloses the fact that deceased was thrown off the cage by the negligent acts of the engineer.   It is true that the evidence is circumstantial, but we contend that circumstantial evidence, based upon the immutable laws of nature, is the strongest and most convincing evi-

dence that can possibly be introduced at the trial of any cause, either civil or criminal.

The explanation of the engineer that the cage did not go below the station is false. It is from a man whose professional reputation is at stake; whose ability to secure future employment is at stake; whose peace of mind during the remainder of his natural life depends on his convincing himself that the facts were different from what the mine inspector opined. Jurors may disregard such testimony. (*Poor* v. *Madison River Co.*, 38 Mont. 341, 99 Pac. 947.) It was contrary to the laws of nature. Jurors must disregard such testimony. (Moore on Facts, sec. 149.) Such is not uncontradicted testimony. The human word is pitted against the word of God, speaking through His laws of nature.

Counsel for appellant contend that the trial court erred in refusing to direct a verdict for the defendant. They seem to admit that plaintiff made out a *prima facie* case; at least they do not argue any specification of error to the effect that the court erred in overruling their motion for a nonsuit. The court held, upon motion for a nonsuit, that a *prima facie* case had been made out for plaintiffs. The court could not, therefore, direct a verdict for defendants. (*McKay* v. *Montana Union Ry. Co.*, 13 Mont. 15, 31 Pac. 999; *Collar* v. *Patterson*, 137 Ill. 403, 27 N. E. 604; *Van Arsdell's Admr.* v. *Louisville N. R. Co.* (Ky.), 65 S. W. 858.)

Appellant insists that only nominal damages can be recovered in this case. It insists that the measure of damages for diminished earning capacity "is to be calculated only for the period intervening between the injury and the death." The legislature, in the year 1905, re-enacted the statutes of 1903, adding the survival clause for the express purpose and intention of giving to the estate of the injured person a cause of action, in event of his death. It would be ridiculous to say that the legislature, after taking the trouble of re-enacting the law for the express purpose of giving the estate a cause of action, should intend that the estate should recover only nominal damages. The great

weight of authority is to the effect that the true measure of damages in cases of this kind is the same as though the injured person was alive and prosecuting the action in person.    (See *Maher* v. *Philadelphia Traction Co.*, 181 Pa. 391, 37 Atl. 571; *Broughel* v. *Southern New Eng. Tel. Co.*, 72 Conn. 617, 45 Atl. 437, 49 L. R. A. 404; *Black* v. *Griggs*, 74 Conn. 585, 51 Atl. 523; *Hesse* v. *Meriden etc. Co.*, 75 Conn. 571, 54 Atl. 299; *Kyes* v. *Valley Tel. Co.*, 132 Mich. 281, 93 N. W. 623; *Oliver* v. *Houghton Co. St. Ry. Co.*, 134 Mich. 367, 104 Am. St. Rep. 607, 96 N. W. 434, 3 Ann. Cas. 53; *Missouri K. & T. R. Co.* v. *Elliot*, 102 Fed. 108, 42 C. C. A. 188; *Muldowney* v. *Illinois Cent. R. R. Co.*, 36 Iowa, 462; *Davidson Benedict Co.* v. *Severson*, 109 Tenn. 572, 72 S. W. 967.)

HONORABLE SYDNEY SANNER, Judge of the Seventh Judicial District, sitting in place of the Chief Justice, delivered the opinion of the court.

The respondents, heirs of Edwin Beeler, deceased, recovered judgment against the appellant company for damages for personal injuries sustained by him while in the service of the appellant company, as the result of the negligence of a fellow-servant.    The cause is now before this court upon appeal from said judgment and from an order denying appellant's motion for a new trial.    The transcript assigns sixty-three alleged errors.    These, however, are consolidated by the briefs filed on appellant's behalf into a few general propositions which will be reviewed in the order of their presentation.

1. It is urged that the complaint fails to state a cause of action in this: (a) That the action is not maintainable by plaintiffs, since it does not survive to the heirs but only to the personal representatives of the person injured; (b) that the action is upon a liability created by statute, and, having been commenced more than two years after the cause of action accrued, it is barred by the provisions of subdivision 1, section 6449, Revised Codes.

(a) The authority for this action is in the Act approved February 20, 1905 (Chapter 23, p. 51, Laws 1905), re-expressed in sections 5248, 5249 and 5250 of the Revised Codes. In section 5250 it is expressly provided that the right of action shall survive and may be prosecuted and maintained by the heirs or personal representatives of the person injured. The complaint alleges that the plaintiffs are the widow and child, respectively, and that there are no other heirs, of the person injured and since deceased. This is a sufficient answer as to the right of plaintiffs to maintain this suit.

(b) The theory of limitation, as disclosed in the Chapter of the Code on that subject, has no reference to the defenses that may or may not be interposed in resistance to a plaintiff's demand; but it is grounded in every instance upon the nature of the demand itself—whether it be upon a judgment, written contract, account, etc. Subdivision 1, section 6449, must be viewed in the light of the fact that the phrase "liability created by statute" has come to have a fixed application to a class of cases quite distinct from those elsewhere mentioned or referred to in the same Chapter. If the action at bar had been for injuries resulting from the negligence of a vice-principal, instead of a fellow-servant, it would be recognized at once as a straight action in tort, governed, as to its limitation, without any thought of its being a "liability created by statute." Now, the fact that the injury which is the basis of the action, resulted from the negligence of a fellow-servant instead of a vice-principal does not affect the essential nature of the action; it is still an action for personal injuries founded upon actionable negligence. And while it may properly be said (see *Kelly* v. *Northern Pac. Ry. Co.*, 35 Mont. 243, 88 Pac. 1009) that under the Act approved February 20, 1905, an employer's liability exists where none existed before, yet the true function of that Act must be regarded, not as creating a new cause of action, but merely to carry forward the right of the injured party and to remove a defense theretofore available in this class of causes (*Dillon* v. *Great Northern Ry. Co.*, 38 Mont. 485, 100 Pac. 960). It fol-

lows that in the sense employed by the Chapter on limitations of actions, this is not an action on a "liability created by statute," and the contention that it is barred by subdivision 1, section 6449, is not sound. Such being our conclusion, it is unnecessary to consider whether, under the conditions presented by the record, the statute of limitations could be available to appellant in the absence of a special plea thereof.

2. In the selection of the jury respondents were permitted to ask each of the jurors whether they had any business relations with the Casualty Company of America. Apparently respondents deemed this information necessary as an aid to the intelligent exercise of their peremptory challenges. It does not appear that either the purpose or tendency of these questions was to inform the jury that the burden of a judgment, if obtained, would fall on an insurance company instead of the defendant, and the company was not afterward mentioned in the case. The first time the question was asked, no objection whatever was made, and we are unable to see how the appellant could have been prejudiced by the examination. (*Hoyt* v. *Independent Asphalt Co.*, 52 Wash. 672, 101 Pac. 367.)

3. It is assigned as error that the district court denied appellant's motion for a directed verdict. This assignment, with that based on the refusal of a new trial, brings up the main question whether the whole case presents a sufficient fact basis for the verdict of the jury.

On the 11th of November, 1906, appellant's shaft was divided into three compartments, the center one accommodating the cage, the east one containing the pumps, and the west one containing a steam pipe-line; and at a point 640 feet below the surface, commonly called the "Six Hundred," there was a controlling valve in the steam line in the west compartment. The station is electric-lighted, and here, as well as at intervals of about 100 feet above, are wall-plates made of 12x12 timbers, which the cage, in passing, would clear by from three to five inches, a space wholly insufficient to admit the passing of an adult human body. To reach the valve in the steam line, a pumpman would neces-

sarily proceed to the "Six Hundred," step from the cage to the wall-plate on the north at or near the northwest corner of the center compartment, thence into the west compartment to the ladder close to the corner; it would take from two to four minutes to close this valve. The cage was a sinking cage, and had no gates; it was operated by means of an engine and cable which were under the control of the engineer who was stationed where he could, and often did, observe it at the surface. The engine, cable, cage, and shaft were all in normal, safe condition. Fifty-five or sixty feet below the "Six Hundred" was the bottom of the shaft, where men were working; water was dropping, and there was water in the shaft and the pumps were at work drawing it out.

On the morning of the day above referred to, Edwin Beeler, a pumpman in appellant's employ, was sent by one O'Neal, his boss, to prime a pump at the "Four Hundred," and after that proceed to the "Six Hundred" and shut off the steam line there. He proceeded to the "Four Hundred," was there about fifteen minutes, primed the pump, passed some remarks with one Simmons, took the cage, rang for the "Six Hundred," and descended. About half an hour after this O'Neal, finding the steam line still open, signaled from the bottom of the shaft for the cage, and, not receiving it, he ascended the shaft by means of the ladder, arrived at the "Six Hundred," and there found Beeler dead, bound tight between the lower edge of the north wall-plate and the upper edge of the bottom of the cage, the floor of the cage being about four inches up on the wall-plate. The cage was rigid, and it was necessary to lower it to remove the body; "it seemed to have him by the breastbone and the lower short ribs, square * * * he was bound in that tight that there wasn't a tremor in the cage at all." His body was held almost erect, his head thrown slightly backward, the hat still on it; both hips were below the floor of the cage but the left leg was drawn up so that the kneecap was above the floor of the cage; his clothing was drawn or bunched sharply upward; he had been dead some time. There was no blood, except a little

froth from the mouth, nor marks of injuries except crosswise at the point of the breastbone, which were not cuts but a crush; the lower ribs were broken at that point.   There were no wounds on the legs or around the region of the hips, front, or rear or sides.   The internal organs of the lower abdomen, everything in the abdominal cavity seemed to be pushed up.   No one saw the accident or heard any outcry.   At the time of the accident Beeler was twenty-seven years old, in good health, sober, steady, and industrious, competent in his business, capable of earning $150 a month, and with a life expectancy of thirty-six years. The injuries sustained by him were such as to totally incapacitate him and to cause his death.   It does not appear that death was instantaneous, but, on the contrary, we think there is sufficient competent evidence in the record to support the conclusion that he lived an appreciable time after the injuries were sustained.

From the foregoing it is quite clear that the accident occurred while the cage was in the upward motion.   In this connection the testimony of the engineer, McNichols, is interesting.   Called first for the respondents, he says: "The signal I got just before Beeler went down on his last trip was a signal from the surface to the 'Four Hundred,' and from the 'Four Hundred' down to where he was found.   *   *   *   I felt nothing caught after that.   *   *   *   When I got the signal to lower to the point where Mr. Beeler was caught, I proceeded to lower.   The cage remained at that point perhaps half an hour.   There were no signals given me from below after that."   If this be true, it is hard to understand why he ordered a "flash" for the cage or gave the "shake-up" signal.   Called in behalf of the appellant, he testified thus: "I lowered the cage to the 'Four Hundred,' stopped there a few seconds, probably a minute.   Then I received a signal to lower it down to this pump, down 230 or 240 feet below that.   That is the place that is commonly called the 'Six Hundred.'   I lowered to this mark, and the cage remained there perhaps ten or fifteen minutes; and the miners in the bottom of the shaft then rang for the cage.   *   *   *   I told

the top man to flash for the cage; * * * we didn't get any answer, and after awhile I signaled by moving the cage up and down a few inches. * * * The cage must have been at this 'Six Hundred' thirty minutes at least, and perhaps forty minutes from the time I lowered it until the time I gave the last signal. When I lowered the cage to this point I lowered it in the manner I always did, just as usual, in a careful manner; * * * it was slow enough. I did not get any unusual movements at the time. I did not carry the cage a considerable distance out of its point; I did not carry it over two inches; I stopped it right on the point. I did not rapidly reverse my engine. I did not jerk the cage. I did not suddenly raise the cage. I did not jerk or handle the cage in any manner that could possibly jerk anyone from the cage. I did not raise the cage a considerable distance, enough to crush anyone against the timbers or against the sides of the shaft. I did not raise the cage at all after I stopped it, any more than signaling him and gave him probably two or three inches, or three or four, something like that. * * * I did not move that cage at all, except to give that shaking-up signal, for thirty minutes from the time I stopped it down at the point of this 'Six Hundred' pump level until I got a signal to bring and raise the cage by the men who went from the bottom up to the cage and found Mr. Beeler's body there. * * * When a pumpman has the cage in the shaft and an engineer gets a signal from other persons to send them the cage, the engineer will customarily wait a while if they think he is going to be through. We may wait a few minutes and then 'shake up' or move the cage a little bit to get a clearance bell. This movement is not sufficient to jar anyone on the cage that might be on it.''

If the "shake-up" was given as McNichols says it was, we agree that it was inadequate to cause the accident. The conclusion is that either the "shake-up" was not so given, or the accident occurred when the cage was in the upward motion at some other time and under circumstances of such a character that McNichols deemed it necessary to deny the circumstance at all.

This court is not unmindful of its oft-repeated declarations that negligence cannot be established by mere conjecture. But there is an obvious distinction between this case and that of *Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243, as well as the other cases in this state in which that rule has been announced. We have here no mere congeries of assumption and presumption, such as appellant would have us believe. When we consider that apart from the "shake-up," the cage had no business to ascend without a signal after it had once stopped for the "Six Hundred"; that the engineer who controlled it says it did stop right at the mark, that he got no signal to move it; that it was not moved except for the "shake-up"; that the physical facts demonstrate that it was moved up from below the wall-plate at the "Six Hundred"; that the "shake-up" as performed could not have accomplished Beeler's injuries; that the engine, cable, cage and shaft were all in normal condition—we have a case, not of conjecture, but of direct and circumstantial evidence sufficient to warrant the jury in saying that the injuries to Beeler were caused by a movement of the cage such as could not have occurred except through the mishandling of this appliance by the engineer.

It is strenuously insisted, however, that the complaint alleges that the engineer "negligently jerked Beeler off the cage" and there is no proof of this; that so far as the evidence shows, Beeler may have fainted or slipped or got between the cage and the wall-plate in some other way than as alleged in the complaint. If all this were true, it still misses the point, which is, that through the negligent mishandling of the engine, cable, and cage by the engineer, Beeler was crushed. If an upward motion of the cage from below the wall-plate caused the crushing of Beeler, and if such motion occurred through the negligence of the engineer, we need not know just how Beeler got between the wall-plate and the cage. It was not necessary for respondents to prove each of the particulars of negligence alleged in the complaint; if enough were shown to establish that the negligence of the engineer in any of the particulars alleged was the proximate cause of

Beeler's injuries, then a case was made sufficient to go to the jury. (*Riley* v. *Northern Pacific Co.*, 36 Mont. 545, 93 Pac. 948; *Hoskins* v. *Northern Pacific Ry. Co.*, 39 Mont. 394, 102 Pac. 988.)

4. Complaint is made of instruction F, as follows: "The court instructs the jury that if under all the evidence and all of the instructions of the court your verdict should be for the plaintiffs and against the defendants, then it will be necessary for you to assess and write into that verdict the amount of damages caused proximately to Edwin Beeler by the acts, if proven, of the hoisting engineer. In determining this amount you are limited to a sum of money which would have compensated Edwin Beeler for the pain and suffering of mind and body which the injuries caused (if any such pain and suffering were caused), between the time that he was injured and the time he died, if he survived the injuries for any length of time, and to the further sum that would have compensated him, unless you find that death was instantaneous, for the impairment, if any, which was caused by the injuries, of his capacity to earn money in the future if he had not been injured. Now, gentlemen, the amount sued for and claimed in the complaint of $25,000 must not be to you any criterion in determining the amount of your verdict, if you do render any, in favor of the plaintiffs, but I charge you that in no event shall your verdict be in excess of the amount of $25,000."

We see no error here. The phrase "any length of time" read in juxtaposition with the phrase "unless you find death was instantaneous" makes it clear that the court intended to advise the jury that there must have been an appreciable period of suffering. The statute authorizing this suit gives to the heirs the right to prosecute and maintain the same action that the injured man could have maintained had he lived. Unquestionably, his right of action included damages for the pain and suffering that he endured and for his diminished and lost earning capacity for the period of his natural expectancy. No reason exists why the scope of the action should diminish because of his

death; to inject such a change into the statute would do violence to its language, and would, *pro tanto* at least, destroy its very purpose. (*Kyes* v. *Valley Telegraph Co.*, 132 Mich. 281, 93 N. W. 623; *Oliver* v. *Houghton County St. Ry. Co.*, 134 Mich. 367, 104 Am. St. Rep. 607, 96 N. W. 434; *Dillon* v. *Great Northern Ry. Co.*, 38 Mont. 485, 100 Pac. 960.)

5. Error is predicated on the admission of evidence that the cage was without gates. It was a sinking cage, and required no gates, nor was any claim of right to recover based upon their absence. The evidence was admitted, not as ground for recovery, but as showing the physical condition of the cage and the engineer's knowledge thereof as bearing upon the degree of care he was required by the circumstances to exercise in the handling of the cage. In this we see no error. Nor is any error apparent in instruction X. It plainly told the jury that "the evidence that the cage was without gates was admitted solely upon the question of the measure of care the engineer should use in lowering and hoisting the same." This instruction was protective of appellant, and the objections to it are hypercritical.

6. Careful consideration and full investigation have been given to the other assignments discussed in the briefs of appellant. We cannot find that any of them are of a character to justify a reversal of this case.

No prejudicial error appearing of record, it is ordered that the judgment and order of the district court be affirmed.

Mr. Justice Smith and Mr. Justice Holloway concur.

Mr. Chief Justice Brantly, being disqualified, did not hear the argument, and takes no part in the foregoing decision.

Rehearing denied September 17, 1910.