No. 14265

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

JEROME F. BORKOSKI,
individually, and as the Administrator
of the Estate of MARY J. BORKOSKI,
deceased,

              Plaintiff and Appellant,

    -vs-

ROBERT P. YOST, JAMES E. GOUAX and
ST. PATRICK'S HOSPITAL,

             Defendants and Respondents.

---

Appeal from:  District Court of the Fourth Judicial District,
              Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Appellant:

        Knight, Dahood, Mackay and McLean, Anaconda, Montana
        David M. McLean argued, Anaconda, Montana

    For Respondents:

        Garlington, Lohn and Robinson, Missoula, Montana
        Sherman V. Lohn argued, Missoula, Montana

---

              Submitted:  February 9, 1979

              Decided: **APR 24 1979**

Filed: **APR 24 1979**

*Thomas J. Kearney*
                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff and appellant Jerome Borkoski filed this medical malpractice and wrongful death action on June 17, 1975, in the District Court, Fourth Judicial District, Missoula County, following the death of his wife, Mary Jane Borkoski, as a result of an automobile accident. Defendants in the action originally were St. Patrick's Hospital and Drs. Robert Yost and James Gouax. Prior to trial, however, Borkoski settled with St. Patrick's Hospital for $90,000. The hospital is not involved in this appeal.

Trial commenced on December 12, 1977. On that day, Borkoski argued his motion to permit voir dire examination of prospective jurors as to the influence of a national campaign by leading insurance companies with regard to jury awards. During discovery, it had been determined that the insurance companies through which Yost and Gouax carried their malpractice insurance had been very actively involved in this campaign.

The gist of the advertisements was that large jury awards would result in everyone paying higher insurance premiums. A fair example of these advertisements depicts a "judge" holding a "jury instruction" which states:

> "When awarding damages in liability cases, the jury is cautioned to be fair and to bear in mind that money does not grow on trees. It must be paid through insurance premiums from uninvolved parties, such as yourselves."

Beneath this picture in large type is the statement: "Too bad judges can't read this to a jury." The advertisement then describes several cases which the sponsoring insurance company points out as illustrative of "windfall" jury awards. The two-page ad then lists several suggestions to clean up the "mess" concluding:

-2-

"We can ask juries to take into account a victim's own responsibility for his losses. And we can urge that awards realistically reflect the actual loss suffered--that they be a fair compensation, but not a reward.

"Insurers, lawyers, judges--each of us shares some blame for this mess. But it is you, the public, who can best begin to clean it up. Don't underestimate your own influence. Use it, as we are trying to use ours."

The sponsor of this particular ad was Aetna Life and Casualty. Dr. Gouax carried his malpractice insurance with Aetna Life and Casualty. Borkoski has presented copies of this and other similar ads which appeared in Time, Newsweek, Sports Illustrated, and Reader's Digest magazines during the approximate time of the impaneling of the jury.

In his motion Borkoski asked:

"For permission to examine prospective jurors with a line of inquiry to determine whether any prospective jurors have been exposed to, have observed, or are aware of the national campaign by leading insurance companies, directed particularly at prospective jurors, to the effect that large jury verdicts are in fact paid by the general public at large and constituted 'windfalls' to the recipients."

The District Court denied this motion. According to the transcript of the argument on this motion, however, the District Court did allow Borkoski to "inquire as to each juror whether or not they feel that doctors are unnecessarily or professional people are unnecessarily oppressed by suits or large verdicts . . ." Further, according to an affidavit filed by the attorney for defendant doctors, Borkoski did inquire as to whether each juror was prejudiced against this type of case and whether prospective jurors had read any articles or advertisements about this type of case which would affect their determination of the case. The exact questions asked during voir dire are not available due to lack of transcript.

The trial lasted from December 12 to December 19, 1977. After receiving the case, the jury deliberated approximately forty minutes before returning a verdict in favor of defendants.

Borkoski moved for a new trial on the grounds that he had been denied a fair and impartial jury when his voir dire motion had been denied and that the verdict was not supported by the evidence. The court denied his motion, and Borkoski appeals.

On appeal Borkoski raises two related issues concerning the denial of his voir dire motion. These may be consolidated as follows:

Whether the trial court committed reversible error and denied Borkoski his right to a fair and impartial jury when it refused to allow Borkoski to pursue a line of inquiry on voir dire to determine whether any prospective jurors were biased against Borkoski as the direct result of the national advertising campaigns by leading insurance carriers to the effect that large jury awards are in fact paid by the general public and constitute "windfalls" to the recipients.

By this appeal, Borkoski brings to the attention of this Court a matter of increasing concern to both lay persons and lawyers. See e.g., Time, February 20, 1978, at 65; Business Week, July 31, 1978, at 39; 64 A.B.A.J. 531 (1978). The possibility of serious prejudice resulting to personal injury plaintiffs as a result of the advertising campaign being waged by the insurance companies constrains this Court to reexamine its rules on the propriety of the mention of insurance by attorneys on voir dire. As evidence of the possibility of prejudice, see the psychological study reported at 65 A.B.A.J. 68 (1979) which concludes that "even

a single exposure to one of these ads can dramatically lower the amount of award a juror is willing to give." 65 A.B.A.J. at 69.

Initially, we agree with Borkoski as to the purpose of voir dire examination:

> "The purpose of voir dire is simply to enable counsel to determine the existence of bias and prejudice on the part of prospective jurors and to enable counsel to exercise intelligently his peremptory challenges." State ex rel. Stephens v. District Court (1976), 170 Mont. 22, 27, 550 P.2d 385, 388.

"Although the trial judge may set reasonable limits on the examination, he should permit 'liberal and probing examination calculated to discover possible bias or prejudice . . .'" Barton v. Owen (1977), 71 Cal.App.3d 484, 508, 139 Cal.Rptr. 494, 508 (citation omitted). The reasonable limits to be set must have due regard for the interests of fairness to both parties. Kiernan v. Van Schaik (3rd Cir. 1965), 347 F.2d 775, 778; Langley v. Turner's Express, Inc. (4th Cir. 1967), 375 F.2d 296, 297.

With these principles in mind, we turn to an examination of this Court's treatment of the mention of insurance during voir dire.

This Court's opinion of the propriety of inquiry by an attorney into a prospective juror's relationship to the insurance industry has varied over time. The first case in which the issue was presented was Beeler v. Butte & London Copper Development Co. (1910), 41 Mont. 465, 110 P. 528. In that case, the respondents were permitted to ask each of the prospective jurors whether they had any business relations with the Casualty Company of America. The Court concluded:

". . . Apparently respondents deemed this infor-
mation necessary as an aid to the intelligent
exercise of their peremptory challenges. It
does not appear that either the purpose or ten-
dency of these questions was to inform the jury
that the burden of a judgment, if obtained,
would fall on an insurance company instead of
the defendant, and the company was not afterward
mentioned in the case. The first time the ques-
tion was asked, no objection whatever was made,
and we are unable to see how the appellant could
have been prejudiced by the examination." 41
Mont. at 473, 110 P. at 530.

Beginning with the very next case on the issue, how-

ever, this decision began to be eroded, primarily on the

basis of the timeliness of objection to the first question

concerning a prospective juror's business relations with an

insurance company. Robinson v. F.W. Woolworth Co. (1927),

80 Mont. 431, 261 P. 253, overruled on other grounds,

Hayward v. Richardson Construction Co. (1959), 136 Mont.

241, 347 P.2d 475; Thomas v. Whiteside (1966), 148 Mont.

394, 421 P.2d 449. Beeler was distinguished:

". . . the opinion in that case does not say
what should have been the ruling of the trial
court if objection had been made the first time
the question was asked and we say now had that
been done in this case the objection would have
been valid and, in that event, should have been
sustained; to have done otherwise, in such
event, would have constituted prejudicial error.
On that point, the authorities are divided but
the weight of authority and, we believe, sound
reason are against the privilege of asking such
questions. A venireman's business, occupation
and connections can be learned, in a proper
way, on voir dire examination, without bringing
into the trial such incompetent matter as the
carrying by defendant of indemnity insurance."
80 Mont. at 443, 261 P. at 257.

Although Robinson was actually decided the same as

Beeler because of the failure to interpose an objection the

first time the question was asked, the penalty suggested in

Robinson was imposed one year later in Wilson v. Thurston

Co. (1928), 82 Mont. 492, 495-96, 267 P. 801, 801-02. This

Court ordered a new trial because of the prejudice caused

when, over seasonable objection, the prospective jurors were asked whether they had any immediate relatives employed by any insurance company.

By 1967, the type of question permitted in Beeler was completely prohibited:

> "The first prospective juror examined by counsel for Mrs. Avery was Mrs. Anna Berry. Counsel for Mrs. Avery inquired:
>
> "'Q. Now, I am going to ask you if you or your husband are the investors in any insurance companies?'
>
> "At that time an objection was interposed by the City and a motion for mistrial presented. The motion was denied and the voir dire continued.
>
> "This same question was asked of each of the twenty prospective jurors. In some instances, counsel for Mrs. Avery would ask the question as the last question of the prospective juror. The purpose of such questioning was obvious, improper and completely prejudicial.
>
> "The law is well-settled in this state that the action of the lower court in permitting this type of questioning on voir dire was prejudicial and reversible error." Avery v. City of Anaconda (1967), 149 Mont. 495, 497, 428 P.2d 465, 466. (Emphasis in original.)

Despite this forceful pronouncement in 1967, the Court, in 1973, in effect reversed its position, explaining:

> "As a general rule if counsel acts in good faith, he may question prospective jurors on voir dire respecting their interest in, or connection with liability insurance companies. See: Anno. 4 A.L.R.2d 761, 792, et seq. for an exhaustive listing of authorities in support. The rationale behind this general rule as indicated by these cases is that every litigant is entitled to a fair and impartial jury; that to secure this right, counsel for a litigant is entitled to question prospective jurors for the purpose of determining any bias or prejudice on their part; that one of the sensitive areas of juror bias and prejudice relates to the existence or non-existence of insurance, particularly liability insurance; and accordingly counsel for a litigant is entitled to a reasonable latitude in voir dire examination to expose any such bias or prejudice on the part of a prospective juror and to enable a litigant intelligently to exercise his challenges, limited only by considerations of good faith." Haynes v. County of Missoula (1973), 163 Mont. 270, 287-88, 517 P.2d 370, 380.

The rule thus adopted enjoys wide, although not unanimous, support among other jurisdictions which have considered the question. Annot., 4 ALR2d 761 and cases cited therein. A slight expansion of this rule which also enjoys fairly wide support involves asking not only whether prospective jurors have a financial interest or connection in the insurance business as stockholders or employees, but also whether they are insurance policyholders in a particular company themselves. E.g., Fowler v. Burks (1974), 52 Ala.App. 14, 288 So.2d 798, 799; Kath v. Brodie (1955), 132 Colo. 338, 287 P.2d 957, 958; Haston v. Hightower (1965), 111 Ga.App. 87, 140 S.E.2d 525, 526; Barrett v. Morris (Mo. App. 1973), 495 S.W.2d 100, 103. This latter expansion generally applies only if the insurance company is a named party or is a mutual insurance company in which member policyholders' premiums are determined directly by the amount of damages paid. The rationale for the rule in the former circumstance is that if the insurance company is a named defendant, the need to keep information about insurance coverage from the jury disappears; in the latter circumstance, where the insurance premium paid by a prospective juror may be directly determined by the amount of damages awarded, the plaintiff is entitled to learn of the juror's direct financial interest in the outcome.

On the more specific issue presented by Borkoski of whether an attorney may inquire on voir dire into the prospective jurors' possible belief, formed by reading or hearing insurance company advertising, news articles, or other outside material, that large jury verdicts will result in larger insurance premiums for them, the cases are far fewer in number. The cases addressing this issue are also far from any sort of agreement.

The jurisdictions of California, Kentucky, Missouri, North Carolina, Texas, and the Court of Appeals for the Third Circuit hold that such inquiry is prejudicial and if allowed constitutes reversible error. Barton v. Owen (1977), 71 Cal.App.3d 484, 508, 139 Cal.Rptr. 494, 508; Murrell v. Spillman (Ky. 1969), 442 S.W.2d 590, 591; Butcher v. Main (Mo. 1968), 426 S.W.2d 356, 360; Maness v. Bullins (1973), 19 N.C.App. 386, 198 S.E.2d 752, 753; Brockett v. Tice (Tex.Civ.App. 1969), 445 S.W.2d 20, 22; Kiernan v. Van Schaik (3d Cir. 1965), 347 F.2d 775, 782-83.

The rationale for these decisions varies. In the North Carolina, California and Texas cases, the respective courts held that this type of inquiry improperly conveyed the impression that the defendant was covered by liability insurance. Exemplary of their reasoning is that of the Texas Court of Civil Appeals in Brockett:

> ". . . counsel then asked the whole panel 'whether any of them thought that a verdict in the case would affect their insurance rates.' The necessary effect of this was to infer that appellant had insurance because a verdict could not possibly affect their rates unless he had insurance. This was error." 445 S.W.2d at 22.

Accord, Maness, 198 S.E.2d at 753; Barton, 139 Cal.Rptr. at 508.

In the Missouri, Kentucky and Third Circuit Court of Appeals cases, the respective courts merely held that exclusion of this type of questioning lies within the discretion of the trial court. (Parenthetically, we note that the other Federal Courts of Appeal which have considered the mention of insurance during voir dire disagree. See, Annot., 40 A.L.R.Fed. 541 (1978); cf.Langley v. Turner's Express, Inc. (4th Cir. 1967), 375 F.2d 296 (any mention of insurance held prejudicial) with Wichman v. United Disposal, Inc. (8th

Cir. 1977), 553 F.2d 1104 (inquiry only as to business involvement with an insurance company is permissible). Kiernan, supra, relied on heavily by Borkoski, does support this latter view. 347 F.2d at 782.)

At the other extreme, the Supreme Court of Arkansas, in a very recent case virtually identical to the instant appeal, has held such inquiry is proper, so long as it is conducted in good faith. King v. Westlake (1978), ____ Ark. ____, 572 S.W.2d 841. The similarity to the instant case as well as the decision by the Arkansas court is contained in the following excerpt:

> "The record shows that for sometime preceding the trial date a number of liability insurance companies had run advertisements in Time, The Wall Street Journal and the Smithsonian Institute magazine aimed at jurors in general to the effect that jurors themselves were affected by the verdicts they rendered in that such verdicts resulted in increased premiums.

> "On voir dire by appellee's counsel and in response to questioning a number of potential jurors responded that they had read Time, The Wall Street Journal, or the Smithsonian Institute magazine. All but two of the jurors indicated that they had seen one or more of the advertisements. Thereafter, as abstracted by appellant the record shows:

> "'Mr. Eubanks continued:

> "'It is improper for either side to imply or suggest that the defendant does or does not have insurance, and the questions I will now direct to you have nothing to do with whether or not the defendant has insurance. The questions I will ask concern your insurance premiums, not insurance in this case. How many of you believe that jury verdicts affect insurance premiums?

> "'Your insurance premiums may not be affected greatly one way or the other, but will not the verdicts that you render have some effect on your insurance rates?

> "'Venireman Gerald Hudgens responded: Yes.

> "'Mr. Eubanks continued:

> "'The question I have been building up to is this: Assuming that the verdict you render could

cost you a little more or a little less money on your insurance premiums, can you listen to the testimony, the statements of counsel, and the instructions and then put aside the financial interest you have in this case because of your insurance premiums and render a verdict? (All jurors raised their hands.)'

"The voir dire of the jury was obviously in good faith and as such was proper. See Dedmon v. Thalheimer, 226 Ark. 402, 290 S.W.2d 16 (1956), where we held the purpose of voir dire examination is to enable counsel to ascertain whether there is ground for a challenge of a juror for cause, or for a peremptory challenge and that so long as counsel acts in good faith, he may, in one form or another question prospective jurors respecting their interest in or connection with liability insurance companies." 572 S.W.2d at 843-44.

Approaching the issue from a different angle, the Supreme Court of Queens County in New York held that the type of insurance company advertisements at issue herein violated a plaintiff's right to an impartial jury and con-stituted jury tampering and therefore could be restrained. Quinn v. Aetna Insurance Co. (1978), _____ N.Y.Misc.2d _____, 409 N.Y.S.2d 473. Similarly, the Commissioners of Insurance in Kansas and Connecticut have entered into consent decrees with one insurance company whereby the company agreed to stop publishing similar advertisements in those states. In re Crum and Forster Insurance Companies, Kan., Office of the Commissioner of Insurance, June 27, 1978; In re Crum and Forster Insurance Companies, Conn., Office of the State Insurance Commissioner, August 14, 1978.

Somewhere between the above extremes lie the decisions of courts in Connecticut, Maryland, and Oregon. Lowell v. Daly (1961), 148 Conn. 266, 169 A.2d 888; Kujawa v. Balti-more Transit Co. (1961), 224 Md. 195, 167 A.2d 96; Johnson v. Hansen (1964), 237 Ore. 1, 389 P.2d 330. These three jurisdictions held that, on the record before the Court, the inquiry was improper yet indicate that had the proper founda-

tion been laid for the inquiry, it would have been permissible.  In the words of the Oregon Supreme Court:

> "In the case at bar there was no preliminary
> showing of any fact that might have made rele-
> vant an inquiry concerning bias arising out of
> the relationship of verdicts and insurance pre-
> miums.  Where a line of questioning obviously
> is going to open up prejudicial speculation,
> e.g., of a racial, religious, political or other
> emotionally charged nature, the exploration of
> which will manifestly incite similar speculation
> upon the part of listening jurors, counsel must
> be prepared to show the need which might make
> such an inquiry relevant, or run the risk of an
> immediate mistrial.  Insurance matters should
> be handled with the same safeguards.  In the
> case before us counsel did not advise the court
> of the existence of recent institutional adver-
> tising, or of other current propaganda calculated
> to produce bias upon the part of jurors in the
> local court.  Thus there was no occasion to open
> up the matter of insurance, whether innocently
> or with scienter.  We hold that the inquiry was
> improper."  Johnson, 389 P.2d at 331.  (Emphasis
> added.)

Accord, Kujawa, 167 A.2d at 98; Lowell, 169 A.2d at 889.

The holdings in these cases are important in our resolu-
tion of the situation such as the one presented in the
instant appeal.  The attorney for Borkoski did present to
the trial court evidence of recent institutional advertising
by the very insurance companies involved in the case; adver-
tising carried in popular national magazines at about the
time of the drawing of the jury panel; advertising calcu-
lated to produce bias upon the part of jurors against award-
ing large amounts of damages to personal injury plaintiffs
such as Borkoski.  Under these circumstances, we conclude
that a line of inquiry designed to uncover this possible
bias should be permitted.

When insurance companies inject the issue of insurance
into the consciousness of every potential juror through a
high priced advertising campaign, as has been illustrated in
this case, they threaten every plaintiff's right to an

-12-

impartial jury. 1972 Mont. Const. Art. II, §26. In such cases, it is only fair that attorneys have some means to secure this right for their clients. Liberal voir dire is the best means to this end. State ex rel. Stephens v. District Court, 170 Mont. at 27, 550 P.2d at 388. See also, comments of University of Illinois Law Professor Jeffrey O'Connell in Time, February 20, 1978, at 65.

Therefore, we hold that in appropriate cases an attorney upon voir dire may inquire of prospective jurors whether they have any business relationship with insurance companies and whether they are policyholders of an insurance company named as a defendant or of a mutual insurance company involved in the case. We further hold that, upon a proper showing of possible prejudice, an attorney may inquire whether a prospective juror has heard or read anything to indicate that jury verdicts for plaintiffs in personal injury cases result in higher insurance premiums for everyone; if so, whether the prospective juror believes such materials; and if so, whether that belief will interfere with the juror's ability to render a fair and impartial verdict. Depending upon the responses received to these inquiries and subject to the discretion of the trial court, limited follow-up inquiries may be made. We decline to hypothesize as to the permissible nature or extent of these follow-up questions at this time. We do conclude, however, that the alleged plan of Borkoski's attorney to circulate among the jury panel copies of the insurance companies' advertisements would have been been improper and would have led to the very prejudice against which Borkoski is now arguing. Liber v. Flor (1966), 160 Colo. 7, 415 P.2d 332, 339.

It is not our intent to ignore the equal right of a defendant to a fair and impartial jury. Therefore, we further hold that, as a prelude to any questions concerning whether a potential juror has read or heard anything to indicate that jury verdicts for plaintiffs in personal injury cases result in higher insurance premiums for everyone, an attorney must ask certain general introductory questions. These initial questions may be approached from two directions: (1) whether the prospective juror has heard of or read anything (not necessarily related to insurance) which might affect his ability to sit as an impartial juror (as was done by the trial judge in this case); or (2) whether the prospective juror regularly reads any of the magazines or newspapers in which it has been demonstrated that the insurance advertisements or articles had appeared (as was done in Westlake). An attorney may utilize either or both of these approaches. If, however, no positive responses are received to these introductory inquiries, there is no reason to pursue further the line of inquiry we have approved above.

The foregoing rules are all subject to a showing that counsel is acting in good faith and is not merely attempting to impress on the jury the fact that the defendant may be covered by insurance. Haynes v. County of Missoula, 163 Mont. at 287, 517 P.2d at 380. We fully subscribe to the following procedure and statement adopted by the New Mexico Supreme Court in Canter v. Lowry (1961), 69 N.M. 81, 364 P.2d 140, 143:

> ". . . the practice which has developed in many jurisdictions of advising the trial court, in the absence of the jury, of the questions proposed to be asked, the purpose thereof, and

> making of a showing of good faith, is definitely
> preferred . . . Failure to follow such preferred
> practice has a tendency to negative a claim of
> good faith. Contrariwise, the following of such
> practice would minimize the possibility of any
> prejudice or injustice to either of the parties
> in many cases, as well as being a considerable
> saving of trial time." (Citation omitted.)

The question of whether the voir dire is in fact being conducted in good faith is thus left to the trial court. State ex rel. Stephens v. District Court, 170 Mont. at 27, 550 P.2d at 388. For the guidance of the trial courts in these matters, we commend to their attention the voir dire approved by the Arkansas Supreme Court in King v. Westlake (1978), _____ Ark. _____, 572 S.W.2d 841, 843-44, and quoted above.

Unfortunately, the foregoing conclusions do not avail Borkoski on this appeal. Even though we accept Borkoski's arguments, it is undeniable that the purpose of the advertisements was to reduce the amount of damages awarded by a jury. At no point is it suggested, either by Borkoski or in the advertisements themselves, that juries should not find a party negligent in the first place. The ads speak only to damages, not liability. Here, the jury found defendant doctors not liable at all. The jury did not even reach the question of damages. In such a case, Borkoski's arguments lose their vitality, and any error committed must be viewed as harmless and not grounds for reversal. Rule 61, M.R.Civ.P.

The judgment of the District Court is affirmed.

_____
Justice

-15-

We concur:

_____
Chief Justice

_____

_____

_____
Justices