632 A.2d 505

**Annie R. WILLIAMS, et al.**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 323, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Nov. 3, 1993.

Certiorari Denied March 9, 1994.

Samuel D. Hill, Hill, Johnson, Foley, Stone & Miles, Towson, and David Kimmelman, Baltimore, on the brief, for appellants.

William R. Phelan, Jr., Sr. Sol. and J. Warren Eberhardt, Principal Counsel (Otho M. Thompson, Deputy City Sol., on the brief), Baltimore, for appellee.

Before WILNER, C.J., and FISCHER and MOTZ, JJ.

WILNER, Chief Judge.

Appellants, Annie Williams, DeForest Williams, and Eugene Whiting, were injured when their car collided with a truck owned by Baltimore City. By its responses to requests for admissions, the City admitted that its driver had "caused the collision." As a result, damages were the only issues to be tried. We are informed by appellants that, prior to trial, the City paid them for the damage to their car, so that property damages were not at issue.

Trial took place in the Circuit Court for Baltimore City. In its *voir dire* examination, the court asked whether any of the prospective jurors knew anything about the accident, knew or had any relationship to the parties, witnesses, or attorneys, had either asserted a claim for personal injury arising from an accident or on-the-job injury, had such a claim asserted against them, or had a "special relationship with Baltimore City." The court defined "special relationship" as employment, pending litigation, or "any other relationship, past or present, with the City that would affect your ability to serve fairly and impartially as a juror." The court also inquired whether any of the prospective jurors would be prejudiced

simply because the City was a party, whether anyone on the jury had a particular hardship or emergency situation that would prevent them from fulfilling their jury duty, and whether there was any other "reason based on any belief, knowledge, information, or experience of any sort whatsoever" that would affect their ability to serve.

The court declined to ask five *voir dire* questions requested by appellants, who timely excepted to the court's decision. The questions were as follows:

"1. Did any of the members of this panel hear the acceptance speech of President Bush at the Republican Convention in which he contended that trial lawyers and all the suits they file have contributed to the economic problems faced by our Country? If so, would what you heard keep you from fairly and justly deciding the issues in this case, especially as to compensation to be awarded?

2. Would any of the members of this panel be unable to fairly and justly decide the issues in this case especially as to compensation to be awarded because of all that you have heard and/or read about the effect of large jury awards on your liability insurance premiums?

3. Would any of the members of this panel be unable to fairly and justly decide the issues in this case especially as to compensation to be awarded because of all that you have heard and/or read about the effect of fraudulent or frivolous law suits for injuries, etc.?

4. Would any of the members of this panel be unable to fairly and justly decide the issues in this case especially as to compensation to be awarded because of all that you have heard and/or read about the high costs of medical care and gauging [sic] or even fraud by doctors in their billing for treatment done or even not done?

5. Would any of the members of this panel be unable to fairly and justly decide the issues in this case especially as to compensation to be awarded because you are a taxpayer in Baltimore City or because you or a close relative or friend works or worked for the City?"

The matter then proceeded to trial, and the jury awarded appellants some medical expenses and lost earnings but virtually no non-economic damages. Appellants moved for a new trial based in part on the court's refusal to ask the five *voir dire* questions; the motion was denied.

On appeal, the single question presented by appellants is:

"Did the trial judge abuse his discretion in refusing to ask the voir dire questions proposed by the appellants' attorney, thereby prejudicing their cases for damages?"

## *DISCUSSION*

■ Appellants, helpfully, frame the issue clearly for us in their brief: "The only issue raised has to do with [the trial judge's] refusal to ask the Voir Dire requested by the Appellants." In Maryland, a trial court has "wide discretion in determining what questions should be asked on voir dire examination of jurors and the exercise of such discretion will not be disturbed on appeal in the absence of a clear showing of abuse." *Goosman v. A. Duie Pyle, Inc.*, 320 F.2d 45, 49–50 (4th Cir.1963) (interpreting Maryland law); *see also Casey v. Roman Catholic Arch.*, 217 Md. 595, 605, 143 A.2d 627 (1958); *Davis v. State*, 93 Md.App. 89, 611 A.2d 1008, *cert. granted,* 329 Md. 22, 616 A.2d 1286 (1992).

■ Notwithstanding the very broad scope of the questions, which in their most particular form were addressed to tort litigation in general or any action brought against the City, appellants contend that the proposed questions would "determine that a prospective juror has such a bias or prejudice against the kind of claim [brought here]." Maryland courts have considered whether a court must examine jurors as to such attitudes and have responded in the negative.

In *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 167 A.2d 96 (1961), the plaintiffs attempted to attribute a disappointingly low recovery to the trial court's refusal to propound the following question on *voir dire:*

"Have you read any article or literature or have you heard any discussion recently on amounts of verdicts in negligence cases, and, if so, have you formed any ideas with reference to amounts of jury verdicts?"

They complained on appeal that the question was "motivated by their desire to counteract what they characterize as a 'steady stream of indoctrination' flowing from the insurance companies to the public generally in such volume as to adversely affect jury verdicts in negligence cases of plaintiffs having honest claims" and that the court erred in refusing to ask the question. *Id.* at 201, 167 A.2d 96.

The Court of Appeals found no error. Noting first that the plaintiffs had failed to establish any prejudice, the Court observed that, "the interrogatory, assuming the subject of the inquiry was proper, was not so framed as to probe for the existence of cause for disqualification which is the sole purpose of the *voir dire* examination." *Id.* at 201, 167 A.2d 96. The Court explained:

"Even if a juror had formed or expressed an opinion as to the adequacies or inadequacies of jury verdicts in negligence cases, that fact would not have disqualified him. A juror to be competent need not be devoid of all beliefs and convictions. All that may be required of him is that he shall be without bias or prejudice for or against the parties to the cause and possess an open mind to the end that he may hear and consider the evidence produced and render a fair and impartial verdict thereon. *Garlitz v. State,* 71 Md. 293, 18 Atl. 39 (1880). Moreover, since the question was in the nature of a 'fishing' expedition condemned by us in other cases—see, for example, *Emery v. F.P. Asher, Jr., & Sons, Inc.,* 196 Md. 1, 75 A.2d 333 (1950)—the denial of it by the trial court was clearly not an abuse of its wide discretion in the matter."

In *Jones v. Federal Paper Bd. Co.,* 252 Md. 475, 250 A.2d 653 (1969), the plaintiffs contended that the court had erred in declining to present several *voir dire* questions to the jury, the fourth of which parallels the questions posed here: "Have any

of you read any articles or advertising in periodical publications which tend to indicate a relationship between the amounts of personal injury verdicts and increases in insurance premiums?" *Id.* at 492–93, 250 A.2d 653. The Court of Appeals held that *voir dire* is within the discretion of the trial court, and that it was not an abuse of that discretion to refuse to ask the questions sought by the plaintiffs there, particularly in light of the fact that the questions would bring into a personal injury trial the issue of insurance coverage. Similar principles have been applied in *Cardin v. State,* 73 Md.App. 200, 533 A.2d 928 (1987), *cert. denied,* 312 Md. 126, 538 A.2d 777, *cert. denied,* 488 U.S. 827, 109 S.Ct. 78, 102 L.Ed.2d 55, *reh'g denied,* 488 U.S. 935, 109 S.Ct. 331, 102 L.Ed.2d 348 (1988), and *Williams v. State,* 77 Md.App. 411, 550 A.2d 722 (1988), *aff'd,* 316 Md. 677, 561 A.2d 216 (1989).

The other Maryland cases relied on by appellants are distinguishable. In *Morris v. Weddington,* 320 Md. 674, 579 A.2d 762 (1990), the Court was concerned with the validity of a jury verdict that appeared to have been affected by jurors' concerns about insurance coverage. That case has nothing to do with the discretion of a court in asking or not asking *voir dire* questions. *Wilson v. Morris,* 317 Md. 284, 563 A.2d 392 (1989), involved evidence of bias warranting *voir dire* of a juror after the jury had been empaneled. In *Wilson,* the plaintiff actually overheard one of the jurors discussing his bias in a hallway before the jury was empaneled but did not report the matter to the court until after opening arguments. The Court held that the trial court erred by not conducting further *voir dire* of that juror, even though trial had already begun. The key difference is that that case involved actual evidence of juror bias, clearly justifying further investigation of attitudes and ability to be impartial. There was no such evidence here.

A few of our sister States have taken a more liberal approach and allowed questions such as those requested here, at least where (1) a proper foundation has been laid, and (2) the questions relate specifically to an identified advertising campaign conducted by the insurance industry.

In *Borkoski v. Yost,* 182 Mont. 28, 594 P.2d 688 (1979), the plaintiffs in a medical malpractice action offered pre-trial evidence of a national advertising campaign by certain insurance companies, including the one insuring the defendants. The gist of the advertisements was that large jury awards result in higher insurance premiums and that, when awarding damages in liability cases, a jury should be cautioned that "money does not grow on trees" and that awards "must be paid through insurance premiums from uninvolved parties, such as yourselves." The advertisements described certain "windfall" jury verdicts and urged juries to help clean up the "mess." *Id.* 594 P.2d at 689. The plaintiff sought, on *voir dire,* to determine whether any of the jurors had been exposed to, or were aware of, this campaign "directed particularly at prospective jurors" and "complained on appeal of the denial of its request."

■ The Montana Supreme Court first noted, 594 P.2d at 690, that, in Montana, the purpose of *voir dire* is to enable counsel to determine the existence of bias and prejudice "and to enable counsel to exercise intelligently his peremptory challenges." In Maryland, of course, *voir dire* is directed solely to discovering a basis for challenging jurors for cause and not to assist counsel in the exercise of peremptory challenges. *Miles v. State,* 88 Md.App. 360, 594 A.2d 1208, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991); *Davis v. State, supra,* 93 Md.App. 89, 611 A.2d 1008. Notwithstanding this enlarged function of *voir dire* examination, the Montana Court was concerned about the implicit injection into the case of the existence of insurance coverage and had to balance that against the right under that State's law to discover a basis for either a peremptory challenge or a challenge for cause. It noted a split of authority among the then-existing cases, some refusing to permit such questions, some expressly allowing them, and some leaving it within the trial court's discretion. In some of the cases, the Court observed, the allowance of questions of this type depended on whether a preliminary showing had been made of a clear likelihood of prejudice. In that regard, the *Borkoski* Court quoted from an Oregon case,

*Johnson v. Hansen,* 237 Or. 1, 389 P.2d 330 (1964), where such an inquiry was held to be improper. In reaching that conclusion, the Oregon Court observed:

> *"In the case at bar there was no preliminary showing of any fact that might have made relevant an inquiry concerning bias arising out of the relationship of verdicts and insurance premiums.* Where a line of questioning obviously is going to open up prejudicial speculation, e.g., of a racial, religious, political or other emotionally charged nature, the exploration of which will manifestly incite similar speculation upon the part of listening jurors, counsel must be prepared to show the need which might make such inquiry relevant, or run the risk of an immediate mistrial. Insurance matters should be handled with the same safeguards. *In the case before us counsel did not advise the court of the existence of recent institutional advertising, or of other current propaganda calculated to produce bias upon the part of jurors in the local court."*

*Johnson,* 389 P.2d at 331, quoted in *Borkoski,* 594 P.2d at 694 (emphasis in *Borkoski* ).

The *Borkoski* Court recounted that counsel for Borkoski *did* present evidence of "recent institutional advertising by the very insurance companies involved in the case; advertising carried in popular national magazines about the time of the drawing of the jury panel; advertising calculated to produce bias upon the part of jurors against awarding large amounts of damages to personal injury plaintiffs such as Borkoski." *Id.* 594 P.2d at 694. Under that circumstance, the Court held, inquiry to discover bias should be permitted:

> "When insurance companies inject the issue of insurance into the consciousness of every potential juror through a high priced advertising campaign, as has been illustrated in this case, they threaten every plaintiff's right to an impartial jury.... In such cases, it is only fair that attorneys have some means to secure this right for their clients. Liberal voir dire is the best means to this end."

Insofar as we can tell, the courts are still somewhat divided with respect to permitting this line of inquiry. Some courts continue to disallow questions of this type or find no abuse of discretion when the trial court does not permit them. *See Bohner v. Stine,* 316 Pa.Super. 426, 463 A.2d 438 (1983); and cases cited in *Borkoski,* 594 P.2d at 692; also *Russo v. Birrenkott,* 770 P.2d 1335 (Colo.Ct.App.1988). Florida leaves it in the discretion of the trial judge, but it is important to note that Florida has abandoned its rule against the jury being informed of insurance coverage. *See Purdy v. Gulf Breeze Enterprises, Inc.,* 403 So.2d 1325 (Fla.1981). Other states that have permitted such questions generally follow the *Borkoski* approach of either allowing *voir dire* to assist in the exercise of peremptory challenges, or requiring a preliminary showing of recent advertisements by insurance companies directed at potential jurors, or both. *See King v. Westlake,* 264 Ark. 555, 572 S.W.2d 841 (1978); *Sutherlin v. Fenenga,* 111 N.M. 767, 810 P.2d 353 (App.1991); *Babcock v. Northwest Memorial Hosp.,* 767 S.W.2d 705 (Tex.1989); *Doe v. Hafen,* 772 P.2d 456 (Utah App.1989), *cert. denied,* 800 P.2d 1105 (Utah 1990); *Evans by and through Evans v. Doty,* 824 P.2d 460 (Utah App.1991); *McCroskey v. Proctor,* 175 W.Va. 345, 332 S.E.2d 646 (1985); *Wardell v. McMillan,* 844 P.2d 1052 (Wyo.1992).

Maryland, as we have observed, has, up to this point, regarded the function of *voir dire* as discovering disqualifying information that would support challenges for cause, and not for assisting in the exercise of peremptory challenges. Additionally, unlike in some other States, the Maryland Court of Appeals has taken a firm stand against a plaintiff injecting into a case the probable existence of insurance coverage. *Morris v. Weddington, supra,* 320 Md. 674, 579 A.2d 762, and cases cited therein. The context in which the issue must be considered is therefore somewhat different in this State than in Montana or some of the other States following a *Borkoski* analysis. We also have the precedential effect of *Kujawa, supra,* 224 Md. 195, 167 a.2d 96, and *Jones, supra,* 252 Md. 475, 250 A.2d 653.

We need not consider here whether, with that background, we would be authorized to adopt the *Borkoski* approach, for, even if we were, the record in this case would not establish error on the part of the trial court. In *Borkoski*, the inquiry was allowed with respect to specific articles recently published by insurance companies and aimed at potential jurors. The questions proposed here were, with one exception, far more general. The most narrowly drawn called attention to President Bush's acceptance speech at the Republican National Convention, the text of which was not presented to the trial court. This was not something generated by insurance companies; nor was it apparently directed at potential jurors, admonishing them, in their own self-interest, to limit damage awards. These proposed questions, in other words, were not proper even under a *Borkoski* approach, and were clearly not required under the current state of Maryland law.

We also see no abuse of discretion in the court's refusal to permit Question 5, asking whether prospective jurors would be biased "because you are a taxpayer in Baltimore City or because you or a close relative or friend works or worked for the City." This was clearly covered in the questions asked by the court.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.